[No. 29329. Department One. June 28, 1944.]

Anna Mahlum, *Respondent*, v. Seattle School District No. 1, *Appellant*.[1]

[1]Reported in 149 P. (2d) 918.

*Lloyd Shorett* and *Wm. R. Bell,* for appellant.

*George F. Hannan* and *Charles H. Heighton,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover damages for personal injuries resulting from the explosion of a steam pressure cooker, alleged to have been caused by the negligence of the defendant. Issues having been joined, the action was tried before a jury, which returned a verdict in favor of the plaintiff. After the denial of post-trial motions, judgment was entered on the verdict, and the defendant thereupon appealed.

The assignments of error aver that the trial court erred (1) in denying appellant's challenge to the legal sufficiency of respondent's evidence to take the case beyond a motion for nonsuit; (2) in denying appellant's motion for a directed verdict at the conclusion of all the evidence; (3) in giving certain instructions; and (4) in withdrawing an instruction

which the court, at the request of appellant, previously had given.

At all times hereinafter mentioned, appellant, Seattle School District No. 1, owned and conducted the educational institution known as Queen Anne high school. In connection with the usual school facilities, appellant maintained on the premises a dining room and a kitchen, where food was prepared and served by its regular employees for the accommodation of the various school attendants. Respondent herein, Anna Mahlum, a woman sixty-one years of age, was employed at the school as an assistant cook.

The kitchen was equipped with a large steam pressure cooker which had three compartments wherein various foods in considerable quantities customarily were cooked. Appellant had acquired the cooker in 1917 and had used it in the West Seattle high school until the summer of 1942. In August of that year, the cooker was moved from that school and, after being overhauled and tested by the appellant in its own machine shop, was installed in the Queen Anne high school.

Inasmuch as the injuries here complained of are alleged to have been caused by a defective instrumentality, or by a negligent use of that device, which was under the control of the owner and employer, its construction and method of operation require some further description.

At the front of each of the three oven compartments of the pressure cooker was a metal door approximately twenty inches long, horizontally, and twelve inches wide, vertically. In this action, we are concerned only with the middle compartment and door. Along the edges of the inner side of the door were grooves fitted with gaskets. These gaskets served as a cushion to alleviate the pressure of steam within the compartment and also were intended to prevent steam from escaping at the edges of the door when closed and locked.

Extending horizontally across, and around the front of, the door, and forming a part thereof, was a cast iron arm, or bar, referred to as a "strong-back." One end of this metal arm served as a hinge to the door, and the other end as a

part of the locking device. The metal arm was approximately twenty-six inches in length and three inches in width, but was partly hollow. It weighed approximately thirty-three pounds. In the center of the arm was a hole about an inch in diameter, into which fitted a screw stem supporting at its outer end a wheel about ten inches in diameter, with three ribs or spokes radiating from its center to its perimeter. The function of this wheel, which was operated manually, was to seal the oven tightly after the door had been closed and locked.

At the side of the pressure cooker was a gauge which registered the amount of pressure of steam coming from the boiler in the engine room several floors below the kitchen. The normal pressure of steam used in the cooking operation was ten pounds, and the gauge was set at that amount.

On the morning of November 18, 1942, shortly after eight o'clock, appellant's employees, including the respondent, were engaged in the preparation of food for the noon meal. In the middle compartment of the oven had been placed a quantity of Lima beans to be cooked. The chief cook, a woman, was attending the operation. She had closed the door of the compartment and sealed the oven. Respondent was peeling potatoes at a table opposite, and with her back towards, the pressure cooker. Suddenly there was a loud explosion and at the same time the door of the oven compartment blew open, and as a result a volume of hot Lima beans was discharged with great force into and about the kitchen. A considerable portion of the oven's contents struck the respondent, who was standing in direct line from the oven. She was severely burned about her shoulders, arms, back, and limbs.

It appeared from a subsequent investigation that the metal arm, or strong-back, had broken squarely in two, near the point where the wheel fitted into it. This had permitted the door to burst open, allowing the contents of the oven to be discharged with great force throughout the kitchen. Other material facts disclosed by the evidence will be set forth later herein.

In her complaint respondent not only charged certain specific acts or tolerance of negligence on the part of appellant, but also tendered an issue of negligence under the doctrine of *res ipsa loquitur*. The third paragraph of the complaint set forth the charges of negligence as follows:

" . . . that the said pressure cooker was an old cooker and had not been properly tested, or that the operator of said cooker carelessly and negligently permitted too high pressure of steam; that said pressure cooker was defective, the precise defect of which is not known to this plaintiff [respondent], but that the said defect was of a nature which permitted the said pressure cooker to explode; that the said cooker was under the exclusive control of the defendant [appellant] and its servants and agents, other than this plaintiff; that in the ordinary usage of said cooker, unless it was defective or unless carelessly operated, it would not explode, but that it did nevertheless explode due either to some mechanical defect therein or to some negligent act or acts of the defendant and its servants and agents, other than this plaintiff."

Appellant denied both the specific and the general charges of negligence and, further, pleaded an affirmative defense, as follows:

"That the pressure cooker referred to in the plaintiff's [respondent's] complaint was of a standard type of equipment in general use, constructed by a reliable manufacturer, and by long use has been found to be safe and dependable in all its parts and attachments; that in the last week of May, 1942, it was completely overhauled, inspected and tested, and found to be in perfect condition for safe use and operation; that a part of the equipment of said pressure cooker was a heavy iron mechanical arm which locked and held the door of the cooker firmly and securely in place when it was in operation; that a further part of the equipment was a pressure gauge which immediately before the accident registered a pressure of twelve pounds; that there was no explosion of the cooker but, due to some latent, hidden, imperceptible and undiscoverable defect in the internal body of the metal arm, it broke, and thereupon the door of the cooker flew open, causing the accident complained of; that the fault or fatigue in the inner body of the metal arm of the pressure cooker was not visible or appar-

ent, and could not have been ascertained by inspection or discovered by the exercise of reasonable care and caution."

Upon the trial it developed, without objection, that, at about the time, or shortly after, the pressure cooker was installed in the Queen Anne high school, appellant, through its mechanical and maintenance department, devised and fashioned in its own machine shop a steel rod to be used by the women cooks in twisting or turning the wheels upon the oven doors and thus sealing the ovens more tightly. This steel rod was two feet long, three-quarters of an inch in diameter, and weighed nearly four pounds. It was bent into a crook at one end and, further up along its side, two pegs, approximately six inches apart, projected vertically about two inches. By means of the leverage obtained when the rod was applied against the wheel a force could be exerted about four times as great as that produced when the wheel was operated directly by hand. The men employees demonstrated to the women cooks how the rod should be used, and the latter followed the instructions, making use of the rod many times a day during the period of the operation of the cooker at the Queen Anne high school. On the occasion in question here, the chief cook had used the rod just shortly before the accident, and about that same time she had noticed that the gauge registered a steam pressure of twelve pounds.

Aside from the testimony relative to respondent's injuries, the evidence was all directed to the character, construction, and condition of the pressure cooker, and to the effect of the constant use of the steel rod in turning or twisting the wheel, which was an integral part of the mechanism. That evidence was supplied in great part by experts or by persons familiar with the use and operation of pressure cookers.

Respondent's evidence upon that subject may be summarized as follows: The pressure cooker in question was, at the time of the accident, at least twenty-six years old. The metal arm, or strong-back, which formed an integral part of the oven door, was made of cast iron. For over twenty years, it has not been considered good engineering practice to use cast iron in structures subject to tension or

flexional stresses, for the reason that it is a brittle metal, excessively low in what is known as elastic limit or tensile strength. At the present time, pressure cookers are equipped with retaining bars, or arms, made of steel, which has four times the strength of cast iron. Continuous use of any metal under severe strain will cause what is known as "fatigue," and when the metal has reached its elastic limit, it will require less than the usual pressure or strain to break it.

Pressure cookers of the type involved in this action are equipped with wheels intended only for manual operation in closing the doors and sealing the ovens. The manufacturer of the cooker knows the approximate amount of force or pressure that can be exerted by means of a wheel of a particular diameter working in connection with a thread and screw of a particular size. With that knowledge, the manufacturer equips the cooker with a wheel which a woman normally can turn by hand and which, when properly used, requires no extraordinary effort to seal the oven tightly, provided the cooker is otherwise in good condition. The use of a steel rod, such as the one involved here, is highly improper, because by means of it a minimum force four times as great as that resulting from mere hand use of the wheel could be exerted upon it, thus creating a serious hazard to the mechanism. This hazard is the more pronounced when the metal arm is made of cast iron or the metal has, by constant strain, approached its elastic limit.

In this instance, the steel rod was not a part of the regular equipment supplied by the manufacturer. It was contrived by the appellant, through its employees having supervision of the cooker, and was supplied to the women cooks with directions that it be used by them in tightening the wheels and thus more securely sealing the ovens.

The gaskets which fit into the grooves on the inside of the oven door should be of soft rubber about three-fourths of an inch thick and should be replaced once in about every six months, in order to keep the oven tightly sealed and thus prevent steam from leaking at the edges. Such gaskets

do not require much pressure from without to seal the doors tightly. In this instance, when appellant last overhauled the cooker, its mechanics put in hard rubber gaskets about one-fourth of an inch thick, instead of soft rubber gaskets of the size above mentioned.

The normal amount of steam pressure required in the operation of the cooker was ten pounds. In this instance the gauge showed a pressure of twelve pounds (per square inch) a few seconds before the explosion.

One of the witnesses, a research physical metallurgist, with thirty-five years of active experience, testified as to the probable causes for the breaking of the metal arm, as fol-lows:

"A. It is highly probable that at the time that bar [the strong-back] was tightened up by the use of this lever [the steel rod] that strain was put on there sufficient to closely approach the elastic limit of that metal. Then if the steam pressure was turned on and we built up that pressure, that could be sufficient pressure to reach the elastic limit of that metal, and gradually cause failure. Q. Is that answer entirely independent of any fatigue that there might be in the metal? A. Yes. Q. Caused by prior use? A. Yes, sir. Q. I believe you already testified that this metal could be fatigued. A. It is possible; in fact, it is quite probable. Q. Now, supposing the metal, on account of the prior use it had been subjected to, became fatigued, then what would that element of fatigue in the metal,—what effect would it have on the breaking? A. It would require less pressure to break it."

Cross-examination:

"Q. It is probable that if after the door of the cooker was tightened up by the use of this bar, or by hand, and then the steam was let in afterwards,—it is probable that that might have been the cause of the break,—that is correct, is it? A. Yes, sir. Particularly with the use of the bar. . . . Q. And you say it is quite probable that it was fatigue in the metal that caused the break? A. A contributory cause. Q. What is that? A. A contributory cause."

From the evidence adduced by the respondent, the jury could well have found that the use of the steel rod caused the break, and that such use was highly improper

in the operation of the cooker; that the appellant negligently failed to install proper gaskets and that such failure led to the use of the steel rod in order to more tightly seal the oven door; that a pressure cooker having a vital part made of cast iron instead of steel is an unsafe instrumentality and at this late day of modern improvements should not be used, or at least should not be subjected to a strain not intended nor reasonably contemplated by the manufacturer. The jury could also have found from the evidence that the metal arm, made of cast iron, had by long use and latterly by constant strain imposed by the continuous application of the steel rod reached its elastic limit, and that the break occurred because of the use of the rod and concurrent excess of steam pressure employed at the instant of the explosion.

It is true that appellant introduced evidence supporting its affirmative defense, set out above, and that such evidence was in great part uncontroverted. However, we are now dealing with the question of the legal sufficiency of respondent's evidence to withstand a motion for nonsuit or to support the verdict. The jury was entitled to accept and believe that evidence, and we are not at all surprised that it did. In our opinion, the evidence was sufficient to establish specific acts of negligence on the part of the appellant as the proximate cause of the injuries.

We are also of the opinion that the evidence was sufficient to permit submission of the case to the jury on the theory of *res ipsa loquitur*. The rationale of that doctrine is that, when the thing which causes the injury is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of events does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. *Poth v. Dexter Horton Estate,* 140 Wash. 272, 248 Pac. 374; *Highland v. Wilsonian Inv. Co.,* 171 Wash. 34, 17 P. (2d) 631.

The pressure cooker was under the management of the appellant. Explosions of such instrumentalities do not, in the ordinary course of things, occur if those in charge of them use reasonable care, for, otherwise, it is quite. unlikely that such devices would long be upon the market or in popular use. In this instance, the explosion did occur. The occurrence therefore afforded reasonable evidence, in the absence of explanation by the appellant, that the accident arose from want of care.

■ It is the rule in this state that allegation and proof of specific acts of negligence do not deprive the plaintiff of the benefit of the doctrine; he may rely both upon his proof of specific negligent acts and upon the presumption, or permissible inference, of negligence, based upon the doctrine of *res ipsa loquitur* as above expressed. *Highland v. Wilsonian Inv. Co., supra; Case v. Peterson,* 17 Wn. (2d) 523, 136 P. (2d) 192.

■ Respondent having made a *prima facie* case by establishing a legal presumption of negligence, it devolved upon the appellant to come forward with evidence explanatory of the occurrence, sufficient to meet and offset the effect of the presumption. To meet that burden appellant offered evidence to the effect that the pressure cooker was of a standard type of equipment, constructed by a reliable manufacturer; that it had been thoroughly overhauled, inspected, and tested before being installed in the Queen Anne high school; that no defects had been discovered therein at the time of such installation; that the break in the metal arm was a straight, clean fracture, revealing no "bubbles," defects, or rust on its surface, nor any cracks at its edges; that any latent "fatigue" in the metal could not have been discovered by inspection; and that the cause of the break could not have been anticipated by the most rigid examination.

The evidence produced by the appellant, however, did not, as a matter of law, overcome the presumption of negligence. It merely gave rise to an issue of fact to be determined by the jury according to the preponderance of the

evidence. *Firebaugh v. Seattle Electric Co.,* 40 Wash. 658, 82 Pac. 995, 111 Am. St. 990, 2 L. R. A. (N. S.) 836; *Briglio v. Holt & Jeffery,* 85 Wash. 155, 147 Pac. 877; *Highland v. Wilsonian Inv. Co., supra; Hardman v. Younkers,* 15 Wn. (2d) 483, 131 P. (2d) 177, and cases therein cited.

As stated in *Highland v. Wilsonian Inv. Co., supra,* proof of regular inspection of a machine still leaves the question of negligence one for the jury, and the presumption is not overcome as a matter of law unless the explanation shows, *without dispute,* that the happening was due to a cause not chargeable to the defendant's negligence. In the instant case, there was a very serious dispute both as to the cause, or causes, of the accident and as to appellant's negligence.

In this connection, appellant further argues, in support of its motion for a directed verdict, that the break in the metal arm resulting in the explosion could be attributable only to a fatigue or crystallization of the metal at the point of the fracture, and that, since this was a latent defect which could not be discovered by the most rigid inspection or test, appellant could not be held liable for the explosion. A number of cases are cited in support of the general rule that the master is not liable for an injury to his servant caused by hidden defects or dangers in the machinery, appliances, or premises furnished to the servant, when such defects or dangers were unknown to the master and were not discoverable by the exercise of reasonable care and skill in inspecting them, and when there is nothing in external appearances to create a suspicion of their presence.

Appellant's argument overlooks the fact, as the jury might well have found it to be, that the proximate cause of the fracture was the abnormal force exerted upon the metal arm by the improper and negligent use of the steel rod, and the further fact, as the jury could also have found, that any "fatigue" in the metal arm was produced by the constant application of flexional stress through daily use of the steel rod. The authorities cited by counsel have no reference to mechanical defects created or augmented by the negligence of the master himself.

Accepting all of appellant's evidence as true, the jury could still have properly found, under all the evidence before it, that the explosion and injury were the proximate results of appellant's negligence. This conclusion disposes of appellant's first two assignments of error.

■ Under another group of assignments, the appellant contends that the trial court erred in giving three instructions relative to the doctrine of *res ipsa loquitur*. It is not contended that these instructions do not correctly state the law upon that subject, but rather that the doctrine has no application to this case. It is true, as appellant points out, that the doctrine of *res ipsa loquitur* is not a substantive rule of law, but simply a rule of evidence (*Penson v. Inland Empire Paper Co.*, 73 Wash. 338, 132 Pac. 39, L. R. A. 1915F, 15), and that it is to be invoked sparingly and applied only where the facts and the demands of justice make its application essential. *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 126 Am. St. 870, 16 L. R. A. (N. S.) 931. In the case just cited, this court stated the rule, together with its qualifications, in the following language:

"Ordinarily it must be a peculiar and exceptional case that will justify the invocation of this rule, except in cases against common carriers where it is frequently applied. However, where the proven or admitted physical conditions, together with the other established facts, show that the occurrence is one which could not ordinarily in the nature of things happen but for negligence on the part of defendant, and it further appears that negligent operation of the apparatus is naturally accompanied with danger, and its control and the knowledge of its condition are practically limited to the defendant or his servants, and evidence as to the same is unavailable except through him or them, the rule may usually be invoked by one to whom the defendant owed a duty of protection and who was under no obligation to, and did not, know or have reason or opportunity to know of the danger that threatened him."

In that case, the injury was inflicted upon a customer of a mercantile establishment when a basket which was a part of an overhead carrier system fell from its track and

struck the customer. We think the language above quoted from that case is applicable here.

Appellant's contention, under these particular assignments of error, is that, where specific acts of negligence are relied upon, and all the facts and circumstances explaining the cause of action are disclosed, the rule of *res ipsa loquitur* has no application. In a general way, that statement may be correct, but we do not think it wholly covers the situation presented in this case.

The respondent did not rely exclusively upon any specific act of negligence, but simply introduced evidence of certain acts, or facts, to be taken into consideration in connection with all the other circumstances, including the presumption arising from the fact of sudden explosion of the pressure cooker. Respondent was not compelled to rely solely on alleged specific acts of negligence, nor could she safely do so, since the jury might not have concluded from such evidence that the accident was attributable to those specific acts. She was entitled not only to rely in part upon that adduced evidence, but also to invoke the presumption arising from an occurrence which does not ordinarily happen in the usual course of things if those who have the management of the apparatus use proper care. Furthermore, while all the facts and circumstances within the knowledge of the respective parties may have been disclosed at the trial, neither of the parties could at that time specify, or be expected to specify, the sole, exclusive, and precise cause for the breaking of the arm or the explosion of the cooker. It was a question for the jury to determine under all the facts shown, aided by the presumption. In *Case v. Peterson, supra,* we stated the rule heretofore enunciated by this court and gave the reason for its adoption, as follows:

"This court has adopted the rule that, even though a plaintiff should base his action upon the doctrine of *res ipsa loquitur,* he may plead and prove specific acts of negligence on the part of the defendant and rely upon the presumption of negligence and, also, upon his proof of specific acts of negligence in support of his right to recover. [Citing cases.]

"The reason for the rule we have adopted by these cases is that a plaintiff may not desire to rely wholly upon the

presumption of negligence, but may wish to strengthen his case by proof of specific acts of negligence so that, if the trier of fact should believe the presumption had been overcome by evidence submitted by the defendant, the plaintiff, if he has a cause of action, would, nevertheless, be entitled to recover upon his proof of the specific acts of negligence."

By the same token, the trier of fact might not be convinced that the accident was caused by any alleged specific act of negligence, and still might find, by application of the presumption and lack of proof overcoming it, that the injury was caused by the negligence of the defendant in the action. We conclude therefore that the doctrine of *res ipsa loquitur* is applicable to this case, and that it was proper to give the instructions on that subject.

Appellant assigns further error on the part of the trial court in giving two other instructions. In the first of these, the jury was instructed that it was the duty of the appellant to furnish equipment which is adequate and safe for the purpose for which it is used; to exercise reasonable care to see that such equipment is not used in such a manner that a part thereof will break and possibly cause injury to people working near the apparatus; and to have the equipment under the supervision of employees who are familiar with the force and pressure to which the respective parts of the equipment may be subjected; and that failure on the part of the appellant to comply with that duty would constitute negligence on its part. In the second of these instructions, the court in substance advised the jury that if it found that the use of the steel rod was an improper method of manipulating the wheel and tightening the oven door, and that such use of the rod caused the strong-back to become weakened and break, and that such breaking proximately caused the explosion, then the appellant would be responsible therefor.

Appellant's criticism of these instructions is that they placed upon the appellant the burden of proving that it was not guilty of negligence; that the instructions were unsupported by the evidence; and that they tended to confuse the minds of the jurors in reaching the proper verdict. We

are unable to agree with appellant's contentions. The instructions were plainly and intelligently worded, containing nothing that would tend to confuse the jury; there was ample evidence to support the propositions stated therein; and they indicated what the respondent, rather than what the appellant, was required to prove.

■ Finally, appellant assigns error upon the action of the trial court in withdrawing from the jury an instruction which it had previously given at appellant's request. The instruction reads:

"You are further instructed that in no instance can the bare fact that an injury has happened, of itself, and divorced from all surrounding circumstances, justify the inference that the injury was caused by the defendant. Nor does it apply where an *unexplained* accident may be attributable to one of several causes for some of which the defendant is not responsible." (Italics ours.)

The first sentence in the instruction is no doubt a correct statement of the law, and its equivalent was in fact given by the trial court in other instructions. The second sentence in the instruction may also be accepted as a correct statement of the law, but that does not necessarily mean that a litigant party is entitled to have it incorporated into an instruction. In fact, if an accident is *unexplained and may be attributable to one of several causes for some of which the defendant in an action is not responsible,* there would be no occasion to instruct the jury upon the subject at all, except to direct it to return a verdict for the defendant. In such situation, the plaintiff could in no event recover, for the reason that he failed to make a *prima facie* case, having shown merely the happening of an accident which on its face could be attributable to a cause for which the defendant was not liable. It is only when the accident or injury is *explained,* either by a showing of several causes for one or more of which the defendant is not liable, or else by a showing of all the surrounding circumstances, from which the jury could likewise reasonably infer a cause for which the defendant is not liable, that an instruction covering that issue would be appropriate. In this case, we do

not have an "unexplained" injury or accident, divorced from any showing of its surrounding circumstances or of any alleged exculpatory facts, but rather do we have an accident and injury which both parties endeavored to explain and fully account for by their evidence. The instruction therefore was not apropos, under the evidence presented, and the court was not in error in withdrawing it from the jury.

The judgment is affirmed.

SIMPSON, C. J., BEALS, JEFFERS, and GRADY, JJ., concur.