ROBERT C. COOK *vs.* FRANK E. NEWHALL.

Essex.    November 7, 1912. — January 29, 1913.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Negligence, Res ipsa loquitur.*

It is not necessary for a presiding judge to state to the jury the established rule, that the unexplained automatic starting of a machine when it ought to be at rest is evidence of a defect or want of repair, where evidence relating to a simple device that has been brought into the court room and inspected affords an explanation of the starting of the machine, where definite causes of starting have been discussed before the jury and where the judge in his charge assumes that the plaintiff relies on such a definite cause and the plaintiff does not except to this assumption.

TORT for personal injuries sustained when the plaintiff was in the employ of the defendant and was operating a machine known as a corn cutter in cutting corn stalks into lengths of one half or three quarters of an inch.  Writ dated October 15, 1907.

In the Superior Court the case was tried before *Lawton,* J.  It was conceded that the defendant owned and furnished the machine and employed the plaintiff to operate it.  The machine was called the "Hero Self Feed Cutter."  There were four spiral knives clamped to the knife shaft, and power from the engine was transmitted to this shaft by a belt.  Back of the knives were two iron rollers between which the corn stalks passed, and as they passed between the rollers they were cut off by the knives, which revolved downward toward the rollers.  The corn stalks were placed on a table or apron some ten feet in length, and were brought between the rollers by the motion of this apron.  The lower roller shaft had a wheel on the left side, the teeth of which fitted into the teeth of a wheel on the knife shaft.  An iron chain connected the end of the roller shaft with a shaft which passed under the apron.  The last mentioned shaft had a wheel upon which were teeth fitting into the links of a chain which was a part of the apron and moved the apron.  When the machine was running, the clamps on the roller wheel fitted together.  A lever was at the left of the machine out-

side the table. When the machine was running this lever was close to the side of the table. When the lever was pushed to the left as far as it would go it dropped into a notch designed to hold it, and when the lever was in this position it separated the clamps and instantly stopped the rollers from revolving, although the knife shaft and knives continued to revolve.

The plaintiff testified that in the course of his employment he stood on the right hand side of the machine and with his hands thrust the corn stalks between the rollers; that while he was thus employed the rollers became clogged to such an extent that the stalks would not pass between them; that the plaintiff threw the lever to the left and into the notch and thereby stopped the rollers from revolving and the apron from moving and then proceeded to pull out the stalks from between the rollers from the rear; that while he was so engaged the lever flew back of itself and caused the rollers to revolve and the apron to move and that as a result of this the plaintiff's right hand was drawn between the rollers and came in contact with the knives and his fingers were cut off and his hand was so mangled and crushed that amputation of it became necessary. There was evidence which tended to show that on other occasions before the accident the machine had started up automatically, but this was contradicted by witnesses for the defendant. The defendant, who was called as a witness by the plaintiff, testified that he never knew or heard of the machine starting automatically.

The plaintiff testified that at the time of the trial he was thirty-seven years of age; that he was born and brought up on a farm and that his occupation always had been that of a farmer and teamster; that before entering the employ of the defendant he had worked for three seasons upon a similar machine and was familiar with its operations. The only evidence in the case tending to show that the machine started up automatically on the day of the accident after it had been stopped came from the plaintiff himself. The defendant testified that at the time of the accident he had been the owner of the machine for five years; that it had been bought as a new machine from a reputable dealer and that it had been used only about three days in the autumn of each year for the purpose of cutting corn for ensilage. At the trial, the machine was brought into the court and its various parts were

inspected by the judge and the jury, particularly the lever and the slot.

In regard to the inferences to be drawn from the single fact of the automatic starting of the machine, if it did so start, the judge charged the jury as follows: "There has been some reference made both in the opening and closing argument of the plaintiff to the effect that the mere happening of the accident is in itself some evidence of a defect and some evidence of negligence on the part of the defendant. In this case I cannot give you that instruction — whether it is material here or not remains to be seen." The charge of the judge is described further in the opinion.

The plaintiff excepted to all those portions of the charge which stated in substance that the automatic starting of the machine was not evidence of negligence.

In the course of the trial the following question was asked the plaintiff by his counsel: "Whether or not you had ever seen other similar machines to this start from a dead stop?" The defendant objected to this question and it was excluded. To the exclusion of this question and its answer the plaintiff excepted. The plaintiff proposed to show by the answer to this question that he had not seen other machines similar to this start from a dead stop.

Also in the course of the trial the following question was asked the plaintiff by his counsel: "Whether or not you appreciated the danger of this machine starting from a dead stop automatically?" The defendant objected to this question, and it was excluded. To the exclusion of this question and its answer the plaintiff excepted. The plaintiff proposed to show by the answer to this question that he did not appreciate such danger.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*J. C. Batchelder,* (*N. D. A. Clarke* with him,) for the plaintiff.

*J. P. Sweeney,* for the defendant, submitted a brief.

RUGG, C. J. The unexplained automatic starting into motion from a state of rest of a machine when according to the mechanical laws of its construction it ought to remain still is not only evidence of a defect or want of repair in the machine, but also of negligence of the owner or person in charge of it in failing to discover and remedy such defect or want of repair. This is firmly established. *Ryan* v. *Fall River Iron Works,* 200 Mass. 188. *Chi-*

*uccariello* v. *Campbell,* 210 Mass. 532. The whole body of the evidence may be such that no particular negligence can be found, and yet the accident may indicate some negligence, the details of which cannot be ascertained. *James* v. *Boston Elevated Railway,* 204 Mass. 158, 162. It is true also that "an unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumptions applicable to it." *Cassady* v. *Old Colony Street Railway,* 184 Mass. 156, 163. *Galligan* v. *Old Colony Street Railway,* 182 Mass. 211: *Parsons* v. *Hecla Iron Works,* 186 Mass. 221, 223, 224. *McNamara* v. *Boston & Maine Railroad,* 202 Mass. 491, 497.

But it is only the unexplained automatic acting of machinery when it should remain at rest which gives occasion for the application of the rule. Instances may arise when the whole situation is fully disclosed, and the starting may appear definitely as due to a particular cause or to one of several distinct and defined causes, and all other causes, conjectural or uncertain in their nature, may be excluded upon evidence which is not open to dispute. Or a plaintiff may place his ground of recovery upon a special cause, and not rely upon the automatic starting. This is not the common case. But *Ross* v. *Pearson Cordage Co.* 164 Mass. 257, illustrates the application of this aspect of the rule. If this is the posture of the case, then the automatic starting of the machine as an unexplained cause of injury does not remain as evidence of a tortious act, but is resolved plainly and without doubt into its component parts, and one or more of these parts must appear to be tortious before there can be recovery. The doctrine of *res ipsa loquitur* has no application where every circumstance and fact is in evidence. *Gibson* v. *International Trust Co.* 177 Mass. 100, 103. Indeed, that doctrine arises only "in the absence of explanation or other evidence which the jury believe" as a rational inference that a certain event does not commonly happen except by negligence. *Graham* v. *Badger,* 164 Mass. 42, 47.

The plaintiff in the case at bar apparently did not rely upon the mere starting of the machine, but pointed to the slot where the shipper was held as the specific difficulty. Although this is not stated with unequivocal clearness, it is fairly to be inferred from the whole of the charge, which proceeds upon the assumption that the plaintiff "goes forward and says . . . the place for you

to look is at that slot" and not that somewhere about the mechanism as a whole something is the matter which he did not undertake definitely to point out. No exception was taken to this part of the charge. The only exception saved was "to all those portions of said charge which stated in substance that the automatic starting of the machine was not evidence of negligence."

The trial judge instructed the jury that "This is not a case, as it seems to me, of an accident happening unexplained." He then proceeded to describe the machine briefly as disclosed by the evidence. It was a corn cutter operated by steam power. It was brought into the court room and exhibited to the judge and the jury, and they saw everything about it, except that it was not coupled to an engine. The plaintiff was an experienced and intelligent workman of mature years. The slot which held the shipper seems to have been a simple device, whose operation was easy of comprehension. The machine itself was comparatively new, had been bought from a reputable dealer, and had been used in the aggregate only a few days. The trial proceeded apparently on the theory that the shipper, which controlled the starting and stopping of a part of the machine, came out of a slot, into which the plaintiff had put it, and thereby started the machinery. The causes suggested in argument and the only ones that had been suggested (according to the charge of the judge) were (1) that the shipper was not put squarely back into the slot; (2) that the edge of the slot was worn down, so that it was not held firmly; or (3) that it jarred out by the mere operation of the machinery without the existence of any defect which could be discovered by inspection and that it had so started before the plaintiff's injury. So far as can be judged from the printed record, considerable emphasis was placed upon the cause last mentioned. With reference to these matters the jury were instructed that if the first was the cause, the defendant could not be found negligent; that if the second was the cause, he could be found negligent, and that if the third was the cause he would be found negligent if the shipper had jarred out before, but not if this was the first time it had jarred out.

As applied to the issues which appear to have been raised at the trial, there was no error in the charge. While generally it would be the duty of a trial judge to say that the unexplained automatic

starting of a machine from a position of rest was evidence of neg-
ligence in its maintenance or care, yet in the case of a simple
device which has been brought into the court room and has been
examined, where definite causes of starting have been discussed
and tried and the judge rules as the basis of his charge that the
issue is not the unexplained automatic starting of a machine and
assumes as a fact that everything in connection with the slot,
to which alone attention was directed, was open to the jury and
had been explained by evidence and this without specific excep-
tion, it cannot be said that the plaintiff shows that a wrong has
been done him. Any statement of law upon the topic of automatic
starting, however sound in itself, became inapplicable. If the
statement of the judge, that everything about the slot, which was
the sole point of attack by the plaintiff, was open and obvious,
was not according to the contention of the plaintiff, then excep-
tions should have been taken to it. It was not enough for him to
take the general exception, because on the facts stated by the judge
it was not necessary to say that the automatic starting of the
machine was evidence of the defendant's negligence. There is
nothing in the record to show that the statement of facts made by
the judge was not correct. The sentences in the charge, which
taken by themselves appear obnoxious to the rule of *Ryan* v.
*Fall River Iron Works* and *Chiuccariello* v. *Campbell,* are to be
read, and must have been understood by the jury, in connection
with the questions which in fact had been tried, and which were
stated by the judge.

The plaintiff does not show that he has been harmed by the
rulings in the rejection of evidence, and his exceptions in this re-
gard must be overruled. It was of no consequence upon any issue,
so far as appears, that the plaintiff had not seen other similar
machines start from a dead stop. The bald inquiry as to the
plaintiff's appreciation of danger does not seem to have been mate-
rial. See *Jeddrey* v. *Boston & Northern Street Railway,* 198 Mass.
232, 235. Appreciation of danger is a composite matter dependent
upon knowledge of facts and the results likely to follow them.

*Exceptions overruled.*