[No. 12741.  Department Two.  November 17, 1915.]

GRACE E. ANDERSON, *Appellant*, v. NORTHERN PACIFIC
RAILWAY COMPANY, *Respondent*.[1]

CARRIERS—INJURY TO PASSENGERS—DEFECTIVE APPLIANCES—NEGLI-
GENCE—EVIDENCE—SUFFICIENCY.  In an action for the death of a
passenger when the drawbar between two of the coaches broke on
a sudden application of the brakes, negligence as to the drawbar
is not shown by evidence that it had become crystallized, which was
a latent defect, not discoverable upon inspection, likely to arise upon
continuous use, and that the drawbar was not different from others
in size, strength or appearance.

SAME—INJURY TO PASSENGER—FAILURE TO FASTEN SAFETY CHAINS
—PROXIMATE CAUSE—EVIDENCE—SUFFICIENCY.  In such a case, negli-
gence cannot be predicated upon the failure to fasten the safety
chains between the cars, where it appears that the object of the
safety chains is to hold the train together in case the regular coup-
ling becomes detached, and that the jerk was sufficient to more than
break the chains.

SAME—INJURY TO PASSENGER—AIR BRAKE — PRECAUTIONS — MED-
DLING BY PASSENGER.  It was not negligence on the part of the com-
pany that the end of the air hose was hooked over the railing, leav-
ing the angle cock exposed, so that a passenger, unlocking the rear
door and meddling with the angle cock, could suddenly apply the
air brakes; since reasonable precautions were taken by locking the
rear door, and the company was not bound to anticipate such med-
dling with the machinery of the train.

SAME—INJURY TO PASSENGER—CAUSE OF ACCIDENT—RES IPSA LOQ-
UITUR.  Where a passenger was killed when a passenger train broke
in two, upon a sudden application of the air brakes by a meddling
passenger, there is no presumption of negligence on the doctrine of
*res ipsa loquitur;* since the precise cause of the accident was dis-
closed as a definite fact, excluding all inferences as to other causes.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered January 26, 1915, upon
granting a nonsuit, dismissing an action for wrongful death.
Affirmed.

[1]Reported in 152 Pac. 1001.

*W. H. Abel, T. H. McKay,* and *Taggart & Phillips,* for appellant.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for respondent.

MAIN, J.—The plaintiff brought this action for the purpose of recovering damages for the death of W. C. Anderson, her husband, which it is claimed was caused by the negligence of the defendant. After the issues were joined, the cause came on for trial before the court and a jury. At the conclusion of the plaintiff's evidence, the defendant challenged the sufficiency thereof, and moved for a nonsuit. This motion was sustained, and a judgment was entered dismissing the action. From this judgment, the plaintiff appeals.

The facts are substantially as follows: On the 23d day of July, 1914, the respondent ran an excursion train from Aberdeen to Moclips, the occasion being that of the butchers' and grocers' picnic. This train as first made up consisted of fifteen coaches, the largest of which had a seating capacity which would accommodate about eighty persons. Before the train left Aberdeen, and owing to the number of people who desired to board the train, the respondent company caused another coach to be attached to the rear end of the train. The train as thus made up then consisted of sixteen coaches. All the coaches were connected with the automatic air brake system. At the rear end of the train a rubber hose extended, which was the air pipe line. This end of the hose was hooked over the railing around the platform of the rear car. On the end of the hose was what is termed an angle cock. By the use of this angle cock the air may be applied from the rear end of the train in cases of emergency, and it may be used by the train crew for signal purposes from that platform.

The railing around the platform of the last coach attached to the train was provided with an adjustable gate. When the train left Aberdeen, it appears that the gate for use in the

railing of this car was missing. Soon thereafter one of the brakemen secured a gate and took it out on the platform for the purpose of adjusting it to the opening. This gate was not of a size to fit the space into which it was to be put. The brakeman returned it into the interior of the car and thereupon locked the rear door of the coach so that passengers could not get out upon the rear platform.

Some time after the brakeman had locked the door, three or four young men, or boys, as they are sometimes referred to in the evidence, approached the back door from the interior of the car, and found it locked. One of the young men said, "this door is locked." Whereupon, another replied, "I have a key that will fit it," and the lock was turned and the young men went out on the rear platform. The youngest of these boys or young men was about twenty years of age, and was a grown man in stature.

After these young men had been on the rear platform for some ten or fifteen minutes, one of them took hold of the angle cock which was on the end of the air hose and "turned it wide open," thus setting the air brakes in emergency on the train and causing it to stop quite suddenly. The setting of the air in this manner caused the cars to jerk with such force as to break the eyes out of the drawbar at the end of the second coach from the head end of the train, causing the train to part between the second and third coaches just as the deceased was in the act of stepping across, so that he fell between the coaches and was killed.

The appellant contends that the respondent was guilty of negligence in a number of particulars, and claims that the cause should have been submitted to the jury. The particulars in which the appellant claims the respondent was negligent will now be noticed.

It is claimed that the drawbar which broke was defective, in that it had become crystallized and that the broken surface shows certain small holes or pockets. The evidence shows that crystallization is a latent defect, and that it is a

condition to be expected in steel which has been subjected to continuous pressing stress. The holes which appear upon the broken surface, the evidence shows, were caused by the air forced in when it was moulded, or might have been caused from pieces of sand. The evidence also shows that all steel has more or less holes in it. The evidence does not show that the holes in this particular drawbar were materially more numerous or different in character from those found in steel castings of the same character. The evidence does show that such holes will weaken the tensile strength of the casting, but does not show that the tensile strength of the casting broken was less than that of other drawbars. The evidence does not show that the drawbar which broke was of a size, strength or appearance different from other drawbars. If the drawbar which broke was crystallized, this was a latent defect which would not have been discovered by inspection. The evidence fails to show a state of facts relative to the drawbar which would establish negligence or from which negligence might reasonably be inferred.

It is next claimed that there was negligence in that the safety chains between the cars where the break occurred had not been fastened. The safety chains referred to are a couple of chains, one on each side of the drawbar, and are to be connected up when the cars are coupled together. The purpose of these chains is to hold the train together if the regular coupling should become detached. On this phase of the case, it appears that, even if the chains had been fastened, they would not have prevented the train spreading, because, as the evidence shows, anything "that would break both eyes out of the coupler would be sufficient to more than break the safety chains." Setting of the air in emergency on the rear of the train when the engine is pulling the train forward will cause the cars to begin to jerk, which jerking gets heavier toward the engine. This train, as stated, consisted of sixteen coaches; and the break occurred between the second and third coaches from the engine.

It is also claimed that it was negligence to have the angle cock exposed over the railing of the rear platform. To this contention there are two answers: One is, that the brakeman by locking the door had exercised all necessary precaution to prevent passengers from being on that platform. The other is the general principle of law often asserted by the courts, that a carrier is not bound to anticipate that a passenger will intentionally meddle or interfere with the machinery of the train. In *Sure v. Milwaukee Elec. R. & L. Co.*, 148 Wis. 1, 133 N. W. 1098, Ann. Cas. 1913 A. 1074, 37 L. R. A. (N. S.) 724, it was said:

"The general principle often decided is that a carrier is not bound to anticipate that a passenger will intentionally meddle or interfere with the machinery of the car or train; that the meddler becomes thereby a trespasser; and if injury results to another passenger by his act the carrier will not be liable in the absence of any other ground of negligence. Carriers are rightly held to a high degree of diligence, but they are not held responsible for the lawless acts of third persons not under their control, which they could not reasonably anticipate. (Citing authorities.)"

It is also contended that a condition of rowdyism existed upon the train, and that the opening of the angle cock was a result of such rowdyism. The trial court in passing upon this question said:

"So far as the alleged misconduct of the boys on the platform is concerned, the court is not impressed with the idea that there was any rowdyism on the train whatever but just some playful conduct on the part of some boys there that did not amount to rowdyism and did not appear to attract the attention of anybody until this accident occurred."

The view expressed by the trial court is amply sustained by the evidence. To use the language of one of the witnesses: "There was just an ordinary picnic crowd, everybody happy, having a good time, and all the boys were cutting up and hitting each other on the head like boys will do." In this connection, the case of *Kelly v. Navy Yard Route*, 77 Wash.

148, 137 Pac. 444, is cited; but the facts in that case are so different from those in the present case that the rule there stated is not applicable.

Finally, reliance is placed upon the doctrine of *res ipsa loquitur*. It is a well known rule that, where a passenger is injured and it is shown that the injury was caused by some person or thing connected with the carrier's railroad or business of transportation, a presumption of negligence will arise. In this case, however, the appellant did not rely upon the presumption, but introduced evidence showing the cause which produced the accident. But this was a definite fact. In such a case the doctrine of *res ipsa loquitur* does not apply. In *Stangy v. Boston Elev. R. Co.*, 220 Mass. 414, 107 N. E. 933, it is said:

"The case at bar is not within the doctrine of *res ipsa loquitur*, which oftentimes is enough to support a finding of negligence on the part of a common carrier. *Rust v. Springfield Street Railway*, 217 Mass. 116, 104 N. E. 367. *Bell v. New York, New Haven & Hartford Railroad*, 217 Mass. 408, 104 N. E. 963. That doctrine does not establish liability where a definite cause is clear on the evidence. It applies only when the cause, although unexplained, does not happen according to common experience without fault on the part of the defendant.

"The case at bar is not an instance of an unsuccessful attempt to prove the precise cause, which would not bar the plaintiff from relying upon appropriate presumptions, but it is a case where inferences are excluded because the cause is disclosed to be a definite fact. *Cassady v. Old Colony Street Railway*, 184 Mass. 156, 163, 68 N. E. 10, 63 L. R. A. 285; *Galligan v. Old Colony Street Railway*, 182 Mass. 211, 65 N. E. 48; *Winship v. New York, New Haven & Hartford Railroad*, 170 Mass. 464, 49 N. E. 647; *Cook v. Newhall*, 213 Mass. 392, 395, 101 N. E. 72; *Buckland v. New York, New Haven & Hartford Railroad*, 181 Mass. 3, 62 N. E. 955. In cases of this sort such fact must be shown to be the result of the defendant's negligence before there can be recovery."

There is no doubt but that the general rule is that a carrier must exercise the highest degree of care and foresight

for the safety of its passengers which is compatible with the practical operation of its trains or cars. The evidence in this case fails to disclose that the respondent did not meet the requirements of this rule. The proximate cause of the accident was the meddlesome act of a passenger which the carrier in the exercise of the highest degree of care could not have anticipated.

The judgment will be affirmed.

MORRIS, C. J., MOUNT, HOLCOMB, and PARKER, JJ., concur.