[No. 29765. Department Two.   August 29, 1946.]

PACIFIC COAST R. R. COMPANY, *Appellant,* v. AMERICAN
MAIL LINE, LTD., *Respondent.*[1]

[1]Reported in 172 P. (2d) 226.

*Graham, Green, Burnett, Howe & Dunn,* for appellant.

*Bogle, Bogle & Gates, Edward G. Dobrin, Stanley B. Long,* and *Thomas L. Morrow,* for respondent.

BEALS, C. J.—Pacific Coast R. R. Co., a corporation, instituted this action against American Mail Line, Ltd., alleging in its complaint the corporate existence of plaintiff and defendant; that the defendant, during the month of August, 1942, was operating "the vessel known as M/S 'Crown City' by and through its duly authorized and appointed agents"; that

"On August 9, 1942, at the hour of approximately 7:14 a. m., the pilot or master or other agents of American Mail Line, Ltd., were operating said M/S 'CROWN CITY' in the vicinity of the dock known as the 'North Tower Dock' owned by the plaintiff, located in the city of Seattle, state of Washington. That said pilot or master or other agents of American Mail Line, Ltd., negligently and carelessly operated and navigated said vessel M/S 'CROWN CITY' so that the same struck a vessel or scow known as Scow 'No. 39' of the Puget Sound Tug & Barge Company, which was standing alongside of said North Tower Dock, causing said dock to be crushed and damaged in the particulars hereinafter set forth."

That the negligence of the master or pilot or other agents of defendant operating the vessel consisted of operating

the vessel at an excessive rate of speed under the circumstances; in failing to maintain a proper lookout and observation of the position of other vessels and structures in waters at the point of operation; in failing to give proper signals; and "in negligently and carelessly striking said scow and ramming said scow into said North Tower Dock without any lawful excuse therefor"; that, as the proximate result of the negligence of defendant, plaintiff's dock was damaged in certain particulars alleged to the extent of $2,736.80.

For a second cause of action, plaintiff alleged that, as a proximate result of defendant's negligence, twenty tons of coal of the value of $165 were dumped into the bay; that the coal belonged to Pacific Coast Coal Company; and that the claim for damages for loss of the coal had been assigned to the plaintiff.

Plaintiff demanded judgment against defendant for the sum of the two items.

Defendant answered the complaint, admitting the corporate existence of the parties and denying that it was operating the Crown City at the time of the accident.

Defendant answered the paragraph of plaintiff's complaint above referred to, alleging negligent operation of the vessel as follows:

"IV Admits that the M/S CROWN CITY struck a scow known as the Scow 'No. 39' while in the vicinity of the dock known as the 'North Tower Dock' and that some damage occurred to said dock, and denies the remaining allegations of paragraph IV thereof."

Defendant denied the other allegations of the complaint.

The action was tried to a jury, and after the close of the case, the court instructed the jury to return a verdict in favor of the defendant. The jury having followed the court's instruction, plaintiff moved for judgment in its favor notwithstanding the verdict on the ground that the defendant was guilty of negligence as a matter of law, and upon the further ground that the persons operating the vessel were, as matter of law, agents of the defendant or its employees, and, without waiving its motion, moved the court to grant

plaintiff a new trial, basing that motion upon several of the statutory grounds.

After argument, the court denied both of defendant's motions and entered judgment dismissing the action, from which plaintiff has appealed.

Appellant assigns error upon the court's instruction to the jury to return a verdict in favor of the defendant, upon the denial of appellant's motion for judgment notwithstanding the verdict, upon the denial of its motion for a new trial, and upon the entry of judgment dismissing the action. Appellant argues together all of its assignments of error.

As to the alleged negligence of respondent's agents, appellant relied upon the doctrine of *res ipsa loquitur,* and introduced no evidence proving or tending to prove any specific act of negligence on the part of those in charge of the navigation of the vessel.

■ The trial court having directed the jury to return a verdict for the defendant, the truth of the evidence introduced by appellant must be assumed, appellant being entitled to the benefit of this evidence, together with all inferences reasonably to be drawn therefrom. The evidence must also be considered in the light most favorable to appellant.

During the last war, the major portion of the American merchant marine was owned by the war shipping administration, acting as an agency of the Federal government, the vessels being maintained and equipped by private steamship companies acting as "general agents" under a standard form agreement.

The United States was the owner of the vessel called the Crown City. April 23, 1942, respondent received information from the United States maritime commission that' the administrator of the war shipping administration had authorized the allocation of several vessels, the Crown City among them, to respondent, for the purpose of

" . . . conducting the business of the vessels for the United States under the General Agent Service Agreement between the United States of America and your company

(WSA 348) dated August 3, 1941, subject to all the terms and conditions set forth therein: . . ."

It appears that November 19, 1941, was the date of the delivery of the Crown City to respondent as "mutually agreed upon." It appears, then, that, at the time of the allocation above mentioned, the vessel was already in the custody of respondent and being operated for the United States under some previous agreement. The WSA 348 General Agent Service Agreement, dated August 3, 1941, was delivered to respondent by letter dated May 8, 1942. The agreement consists of thirteen pages, and was designated

"GAA 4-4-42                          Contract WSA 348
"SERVICE AGREEMENT FOR VESSELS OF WHICH
THE WAR SHIPPING ADMINISTRATION IS OWNER
OR OWNER PRO HAC VICE,"

and was entered into between the United States acting through the administrator, war shipping administration, and respondent, therein called the "General Agent."

According to the terms of the agreement, it was the duty of respondent, as agent for the United States, to manage and conduct the business of vessels assigned to it from time to time in accordance with directions and regulations as prescribed by the United States. *Inter alia,* it was the duty of respondent to procure masters for vessels allocated to it, subject to the approval of the United States, the master to

". . . be an agent and employee of the United States, and shall have and exercise full control, responsibility and authority with respect to navigation and management of the vessel." ARTICLE 3A (d)

The agreement contained, of course, many other provisions.

Respondent hired the master and crew and paid their wages either from advances had from the United States or from its own funds, for which it was later reimbursed by the United States.

It appears from the record that, August 9, 1942, at about seven a. m., the Crown City, a fairly large vessel then owned by the United States, but operated by respondent

for the United States pursuant to the service agreement, then carrying army cargo, was proceeding on her way within Elliott bay in the vicinity of the North Tower dock, Seattle, owned by appellant. The record discloses nothing as to the approximate distance of the vessel from this dock or the direction from which she had come, where she was going, her speed, or the proximity of other vessels. The day was clear, there was a light wind, but no unusual atmospheric conditions existed. Captain Collon was master of the ship, but whether or not he was on the bridge at the time mentioned does not appear.

The record does show that, while proceeding on her way, the Crown City struck Scow No. 39, belonging to Puget Sound Tug & Barge Company. As to just where the collision occurred, the record is silent; nor can the exact position of the scow at the time of the collision be determined. No witness was called who saw the collision.

Samuel Martin testified that he was employed by Pacific Coast Coal Company as a yard man on the North Tower dock. At about seven a. m. he was changing his clothes preparatory to going to work, when he heard a crash; that he finished what he was doing, lit a fire, and then went to the dock, where he saw the

". . . scow pretty well underneath the dock there, and the stern of the ship was a little way ahead of it when I got down there."

He further testified that the vessel's bow was outside of the next pier.

On cross-examination, the witness testified as follows:

"Q. You didn't see the accident occur, did you? A. I did not, no. Q. You simply heard a crash while you were dressing? A. I heard it, yes. Q. And you completed dressing? A. I did, yes. Q. And you went outside? A. Yes. Q. And you saw a vessel? A. Yes. Q. Out there, and a scow underneath— A. (Interrupting) Partly underneath the dock, yes. Q. Partly underneath the dock? A. Yes. Q. The vessel was out in the waterway? A. The stern against the dock. Q. The stern was against the dock? A. Yes, ahead of the scow. Q. Pardon me? A. It was ahead of the scow. Q. The head of the scow was against the dock? A. Yes. Q. The vessel

was not against the dock? A. Well, the stern was against the dock. Q. The ship was against the dock? A. Yes, the stern. Q. The stern? A. Yes."

Clay V. Wilson, testifying on behalf of appellant, testified that he arrived on the scene between eight and eight-thirty a. m.; that the Crown City was then at the south side of the Union Pacific dock, the next dock to the north. In answer to a question as to the location of the scow when the witness first saw it, he answered:

"Q. Where was the scow when you arrived? A. The scow had slipped away from the dock and had been, I believe,—the boys had pulled her forward a little ways, only about half over the hole in the dock. Q. Was it tied up to the dock? A. Oh, yes."

During the course of the examination of this witness, the following colloquy between court and counsel occurred:

"MR. HAWKINS: You admit the Crown City struck the dock in your answer. I don't know that there can be much dispute. MR. MORROW: I don't know that we admit it. THE COURT: Yes, that is admitted. MR. MORROW: The proof indicates that the scow struck the dock. THE COURT: Paragraph 1 and 2 are admitted; Paragraph 3 is denied. MR. HAWKINS: You have admitted that the Crown City— MR. MORROW: (Interrupting) We are willing to admit the Crown City struck the scow; and in view of the proof, it appears that the scow struck the dock. THE COURT: That is the way the answer is framed. MR. HAWKINS: There is no argument about it. MR. MORROW: It didn't strike the dock; it was the scow. MR. HAWKINS: The Crown City struck the scow and rammed the scow into the dock; and that is admitted in your answer. And Mr. Martin testified that the stern— MR. MORROW: That is— MR. HAWKINS: (Continuing)—of the Crown City was up against the dock. MR. MORROW: The point is, the vessel didn't strike the dock."

That the dock was damaged as alleged in appellant's complaint, is not disputed; and the loss of the coal as alleged in the complaint was admitted. Whether or not the scow or the vessel were damaged, does not appear.

Appellant contends that, at the time of the accident, the master, officers, and crew of the Crown City were under the control of respondent and not of the United States; that

they were respondent's employees, and that respondent is liable for damage done by the vessel while under their control.

In the alternative, appellant contends that, even if the master and crew were in the employ of the United States, they were also under respondent's control, and that respondent is liable as joint principal for their negligence.

The only evidence introduced by appellant, save the above referred to, concerned the question of agency and of respondent's liability to respond in damages, as well as the damages which resulted from the accident.

As to the matter of any negligent operation of the vessel by respondent's agents in charge of the ship, the case was based and submitted to the court upon the doctrine of *res ipsa loquitur*.

This being true, the first question to be determined is whether or not, assuming, for the sake of argument, that the master and crew of the Crown City were, at the time of the collision, in the employ of respondent and not of the United States, the record contains sufficient evidence to justify the submission of the case to the jury under the doctrine of *res ipsa loquitur*. If it should be determined that the record contains no evidence sufficient to carry the case to the jury under this doctrine, questions concerning the general agent service agreement or the responsibility of respondent need not be considered.

As, apparently, the Crown City collided with the scow while both vessels were in navigable waters, any resulting liability on account of damages to the scow would constitute a "maritime tort." The damage to the dock having been consummated upon land, the question of liability is to be determined by local laws, rather than by rules prevailing in admiralty jurisdictions. Robinson on Admiralty 65, 66.

As the action, then, is an ordinary law action for negligence based upon an alleged tort, appellant bears the burden of showing not only that an accident and resulting damage occurred, but also that the damage was caused by the negligence of respondent or its agents.

■ Generally speaking, the mere fact that an injury has been sustained does not of itself, apart from the causative factors, create a presumption of negligence. *Anderson v. Harrison,* 4 Wn. (2d) 265, 103 P. (2d) 320.

■ This rule applies to damages upon or caused by ships. *The William Branfoot,* 52 Fed. 390, 394; *The Mercier,* 5 F. Supp. 511; *Cincinnati, N. O. & T. P. R. Co. v. South Fork Coal Co.,* 139 Fed. 528, 1 L. R. A. (N. S.) 533.

In the case at bar, appellant relies upon the doctrine of *res ipsa loquitur.* It is alleged in the complaint that the Crown City, while operating in the vicinity of the dock in question, struck Scow No. 39, "which was standing along-side of said North Tower Dock, causing said dock to be crushed and damaged" in the particulars alleged in the complaint.

Appellant contends that, pursuant to the pleadings and under the circumstances disclosed by the record, negligence on the part of the captain of the ship or those operating it must be inferred under the doctrine of *res ipsa loquitur.*

In 45 C. J. 1200, Negligence, § 771, appears the following:

"Application of Doctrine. The doctrine of res ipsa loquitur, now a familiar rule of practice in the trial of negligence cases, which is frequently recognized and applied without specifically naming it, is not a rigid or arbitrary formula, but a rule that adjusts itself to circumstances. However, as it is not the naked injury but the manner and attending circumstances of the accident that justify the application of the doctrine in an action for the negligent breach of an ordinary duty, it follows, as a matter of course, that the applicability of the doctrine must depend upon the peculiar facts and circumstances of each individual case, and consequently that no rule of general application can be laid down nor exact classification made as to when it may or may not be properly applied. Furthermore, while the application of the doctrine is considered to be in the aid of the fair administration of justice, and not unjust to defendant, it has been held that the doctrine is of limited and restricted scope ordinarily to be applied sparingly and with caution in peculiar and exceptional cases, and only where the facts and demands of justice make the application essential."

In 38 Am. Jur. 989, Negligence, § 295, the rule is stated as follows:

"While the mere fact of an injury will not give rise to a presumption of negligence on the part of anyone, under the doctrine of res ipsa loquitur, an expression which means, literally, the transaction speaks for itself, the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care. Hence, the occurrence of an injury under the circumstances as set forth permits an inference, or in the terminology of some courts, raises a presumption, that the defendant is guilty of negligence. It has been said that the phrase 'res ipsa loquitur' is a symbol for the rule that the fact of the occurrence of an injury, taken with the surrounding circumstances, may permit an inference of culpability on the part of defendant, make out plaintiff's prima facie case, and present a question of fact for defendant to meet with an explanation. In the language of a leading case, 'where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened,' negligence may fairly be inferred in the absence of any explanation."

In the case of *Sweeney v. Erving,* 228 U. S. 233, 57 L. Ed. 815, 33 S. Ct. 416, Ann. Cas. 1914D, 905, an action for personal injuries, the case referred to in the foregoing text, the supreme court considered the application of the doctrine of *res ipsa loquitur.* The supreme court of the United States stated the rule that, in cases where the doctrine properly applies, it has not the effect of shifting the burden of proof. Continuing, the court said:

"The general rule in actions of negligence is that the mere proof of an 'accident' (using the word in the loose and popular sense) does not raise any presumption of negligence; but in the application of this rule, it is recognized that there is a class of cases where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed, by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, *res ipsa loquitur*—the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence."

In the case of *McClellan v. Schwartz*, 97 Wash. 417, 166 Pac. 783, this court, speaking through Chadwick, J., considered at some length the application of the doctrine of *res ipsa loquitur* to an action for personal injury brought by one who was injured on the business premises of the defendant. The court said:

"The fairest, and at the same time the strongest, statement in favor of the position of the appellant is to be found in *Graaf v. Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016.

" 'Common observation and experience teach that sound appliances do not break when employed in a proper manner and in the use for which they were designed.'

"Because of the circumstantial character of the testimony, the doctrine is applied sparingly. *Anderson v. McCarthy Dry Goods Co., supra.* Hence it has been held that one charged under the doctrine of *res ipsa loquitur* is not to be put to his proof unless there is some showing of cause—careless construction, lack of inspection, or misuser. The cause of the accident—the offending instrumentality—must be identified before one charged is put to answer.

"The rule applied to a similar state of facts is accurately stated in *Johnson v. Columbia & Puget Sound R. Co.*, 74 Wash. 417, 133 Pac. 604. There the cause was not shown, nor was it shown that the appliance was defective. The court held, just as it was held in *Cole v. Spokane Gas & Fuel Co.*, 66 Wash. 393, 119 Pac. 831, that it is a showing of facts sufficient to sustain a presumption of negligence, and not the fact of injury, that sets the doctrine in motion. The reporter gathered the rule of the cases and has well stated it in the syllabus to the *Johnson* case, *supra.*

" 'There can be no recovery on the ground of *res ipsa loquitur*, where there was nothing to show what caused the iron to slip and no proof of negligence; since it was necessary for plaintiff to show that it was caused by defective machinery or some extraordinary or negligent act under the control of the defendant.' "

In the case of *Brothers v. Grays Harbor Bldg. Co.*, 152 Wash. 19, 276 Pac. 896, it appeared that the plaintiff was injured in a bath house operated by the defendant, and sued to recover damages. The plaintiff was taking a "Russian bath" in the establishment, being thoroughly familiar with the operation. He was placed under a shower and the water turned on. He testified that shortly thereafter he became unconscious and remembered nothing more until he came to under the care of a physician, suffering from severe burns. The court states that the exact manner in which the plaintiff was injured is not disclosed by the evidence. In the course of the opinion, we said:

"In the case at bar, of course the bath house and all rooms and apparatus therein were under the control and management of appellant, and appellant owed to respondent the highest degree of care, but we are left in doubt as to what 'thing' produced the injury. Ordinarily, if water coming from the shower becomes too hot, the bathers step out from under the apparatus; hot pipes and radiators are necessary in a bathing establishment, and are entirely harmless to patrons using ordinary care and in possession of their faculties."

After discussing the facts, the opinion continues:

"Whether or not respondent was injured by falling against a hot radiator or steam pipe, or whether he was scalded by live steam or hot water, is entirely a matter of speculation. It nowhere appears from the testimony that the appliances in and about the room in which respondent was injured were negligently constructed or installed, or that there was anything unusual or dangerous in the position thereof in the room, or that good practice required that they be guarded in some manner. There is no testimony in the record concerning the temperature of the room in which respondent was taking the shower, or as to the degree of heat of the water. Respondent does not claim that he was conscious of any

unusual degree of heat. It clearly appears that, had respondent not become unconscious, he would have suffered no hurt. What caused respondent to become unconscious, is uncertain; he may have gone to sleep and fallen, striking his head and becoming unconscious from the blow; he is uncertain as to when he lost consciousness; we have little to guide us save the facts that respondent was in the bath house, and was badly burned while there."

After discussing many authorities, the court concluded that the evidence afforded no support for the judgment in plaintiff's favor entered upon the verdict of the jury, and reversed the case with instructions to dismiss.

In the case of *Wellons v. Wiley,* 24 Wn. (2d) 543, 166 P. (2d) 852, we held that the doctrine of *res ipsa loquitur* was not applicable, and quoted from *Mahlum v. Seattle School Dist. No. 1,* 21 Wn. (2d) 89, 149 P. (2d) 918, in which the doctrine was applied, as follows:

" 'It is true, as appellant points out, that the doctrine of *res ipsa loquitur* is not a substantive rule of law, but simply a rule of evidence (*Penson v. Inland Empire Paper Co.,* 73 Wash. 338, 132 Pac. 39, L. R. A. 1915F, 15), and that it is to be invoked sparingly and applied only where the facts and the demands of justice make its application essential.' "

■ Under the authorities, the doctrine of *res ipsa loquitur* applies only when the damage caused, which is the basis of the action, is of such a nature that it can be said that, according to common experience, the event which caused the damage would not have occurred without some fault on the part of the persons sought to be held responsible. *Anderson v. Northern Pac. R. Co.,* 88 Wash. 139, 152 Pac. 1001; *Anderson v. Harrison,* 4 Wn. (2d) 265, 103 P. (2d) 320. Hence, before the doctrine of *res ipsa loquitur* may be invoked, there must be sufficient competent evidence concerning the particular extraordinary circumstances from which it may be inferred that the specific occurrence does not according to common experience happen without fault on the part of the defendant.

The doctrine is more liberally applied in cases of injury by some "dangerous agency." No such situation is here presented.

In 13 Wash. L. Rev. 215, "The Doctrine of Res Ipsa Loquitur in Washington," is found the following text, p. 216:

"Before any presumption can arise the circumstances from which it is to arise must first be established. In other words, even though the plaintiff relies on the doctrine of *res ipsa loquitur* for recovery, he still has the duty of proving those facts and circumstances from which the inference of negligence is to be drawn. As Harper puts it, 'the plaintiff must still show what happened. The presumption of *res ipsa loquitur* relieves him from showing how it happened.' For example, the plaintiff who claims that the defendant negligently allowed a barrel of flour to fall on him, must first prove that a barrel of flour did fall on him, and, that the barrel of flour fell from a window in the defendant's shop. After these facts have been established, the presumption will arise, but not until then."

The court of appeals of Alabama, in the case of *Southern R. Co. v. Hargrove,* 26 Ala. App. 165, 155 So. 316, in an action for personal injuries, the plaintiff's case resting upon the doctrine of *res ipsa loquitur,* concerning that doctrine said:

"The plaintiff rests his case upon the doctrine of res ipsa loquitur, which is broad in its presumptions and under certain circumstances furnishes a basis for an action for negligence. But this doctrine has its limitations and may not rest alone on speculation. It is not that in any case negligence can be assumed from the mere fact of an accident and an injury. In such cases the surrounding circumstances are necessarily brought into view by showing how the accident occurred, and, when these surrounding circumstances do no more than tend to prove the accident, without fixing or tending to connect the defendant as the negligent agent, the doctrine has no force. The doctrine of res ipsa loquitur does not and is not intended to dispense with proof of culpable negligence on the part of the party charged. It is a substitute for specific proof of acts or omissions constituting negligence. In other words, it is a rule of evidence, and, unless the proof of the accident and attendant circumstances connects the defendant as the guilty agent, there is no room for its application. 45 C. J. 1196 (769)."

In the case at bar, before the doctrine can be applied, appellant, relying exclusively upon the doctrine, bears the burden of proving, by evidence, facts from which, under the

peculiar circumstances of the case, the inference of negligence may be drawn, namely, the ramming of the dock by the Crown City or the collision with the scow, with resulting damage to the dock.

Concerning the first alternative, there is no evidence in the record from which it could be inferred that the Crown City directly rammed the dock.

As to the second alternative, respondent admitted that the ship struck the scow, but respondent did not admit the further allegation in appellant's complaint that the ship struck the scow while the scow was standing alongside appellant's dock. As above stated, respondent denied the allegations of the paragraph of appellant's complaint alleging the collision, save as expressly admitted. Respondent then admitted only that the ship struck the scow while in the vicinity of the dock, and that some damage occurred to the dock.

There is no evidence that the scow was moored to the dock, whether it was moving, under its own power or being towed, or how far it was from the dock. No evidence was introduced as to where, how, or why the vessel struck the scow, or which part of the scow was struck, or which part of the vessel struck it, appellant evidently relying solely upon the respondent's admissions in its answer, the evidence of damage to the dock and the doctrine of *res ipsa loquitur*. Appellant introduced no evidence bearing upon any of these matters.

■ It is true that what may be called preliminary evidence as to the surrounding circumstances from which the doctrine of *res ipsa loquitur* may be invoked may be shown by circumstantial evidence. *Leathem Smith-Putnam Nav. Co. v. Osby,* 79 F. (2d) 280 (certiorari denied, 296 U. S. 653, 80 L. Ed. 465, 56 S. Ct. 370); *Harke v. Haase,* 335 Mo. 1104, 75 S. W. (2d) 1001; *Hilson v. Pacific Gas & Electric Co.,* 131 Cal. App. 427, 21 P. (2d) 662.

Nevertheless, the doctrine of *res ipsa loquitur* has its well-defined limitations, and its application to a particular state of facts cannot be based on speculation alone.

In the case at bar, the record is absolutely silent as to any facts indicating, or from which it might be inferred in favor of appellant, that Scow No. 39, at the time it was struck by the Crown City, was standing alongside of appellant's dock. The words "standing alongside" are extremely indefinite, and from the words it could not be determined with any degree of precision the position of the scow with reference to the dock. There is no suggestion in the evidence as to the size of the scow; whether or not it was parallel to the dock, or how far from the dock it was "standing." The length of the dock does not appear, nor the position of the scow with regard to either end of the dock. As we have stated, nowhere does it appear that the scow was moored at the dock. We do not know whether or not the space between the docks was occupied by other shipping, and, if so, how much or where located. Respondent offered no evidence save that of one witness who testified concerning the agency agreement pursuant to which the vessel was operated.

The authorities, both texts and decided cases, agree that, before the doctrine of *res ipsa loquitur* can be applied, the facts and attending circumstances must appear. This court has held that the doctrine is of limited scope and sparingly applied. Almost all other courts which apply the doctrine at all have followed that principle.

The testimony of Messrs. Wilson and Martin as to what they observed after the collision is not sufficient to support any inference that the scow was standing against the dock, or even that the scow was stationary and not moving, and a finding that the scow was at rest touching the dock, or even that the scow was very close to the dock, would rest on guess or speculation only.

The question of whether or not respondent is liable to appellant due to the relations of respondent, the ship Crown City and the United States government, is argued extensively in the briefs, and the decision of the trial court was based solely upon the ground that respondent was not the employer of the master and crew of the ship and was therefore not responsible for damage inflicted by the vessel.

For the reasons above stated, we find it unnecessary to decide this question and express no opinion thereon.

The evidence is insufficient to bring the case within the doctrine of *res ipsa loquitur*. The record does not warrant any judgment in favor of appellant.

The judgment appealed from is affirmed.

BLAKE, ROBINSON, and JEFFERS, JJ., concur.

[1]Reported in 172 P. (2d) 279.