## 245. SOUTHERN RAILWAY COMPANY *v.* FLYNT.

1. The statute requiring the blowing of the whistle or the ringing of the bell and the checking of the speed of the train when approaching a public crossing is not applicable when the injury occurred elsewhere than at a public crossing. The statute is for the protection of those on the crossing, approaching with the intention to use it, or who have just passed over the crossing.

2. The violation of a rule of the company in the operation of its trains is not actionable negligence unless such violation was the proximate cause of the injury.

3. Relatively to travelers on adjacent highways, when the crossing law is not applicable, railroad companies are under no duty to regulate the speed of their trains to prevent horses from becoming frightened at the sight of the moving train, or the noise produced thereby, and are not liable for injuries resulting from horses becoming frightened on highways at the mere sight of its trains, or the noises usually and necessarily incident to the running of the trains.

4. Railroad companies are not required, where the crossing law does not apply, to give any warning signal to travelers upon adjacent highways of the approach of the train, nor are they required to keep any lookout for such travelers. The probability of horses becoming frightened on public roads near to railroad tracks by the running of trains which may result in injury is a risk which the traveler on the road assumes, and is one for which the railroad company is not responsible, unless caused by the negligent conduct of its employees in operating the train in an unusual and unnecessary manner.

5. The duty to give warning signals, and to keep a lookout, is limited to persons on the track or that apparently may get on the track. No such duty is required as to travelers on adjacent and parallel highways.

6. Where those in charge of the running train see apparent danger to persons on the highway, it then becomes their duty to use reasonable and practicable care to prevent injury.

7. "Injuries resulting from the frightening of a horse by the appearance of moving railway cars, trains, or locomotives, or the usual noises or incidents of their ordinary operation, are damnum absque injuria."

8. Applying the foregoing principles of law to the petition and the amendments thereto, there was no actionable negligence alleged; and the general demurrer should have been sustained.

Action for damages, from city court of Forsyth—Judge Clark. January 19, 1907.

Argued March 28,—Decided June 20, 1907.

*Arthur Heyman, Cabaniss & Willingham,* for plaintiff in error.

*Smith, Berner, Smith & Hastings,* contra.

HILL, C. J. J. W. Flynt brought suit against the Southern Railway Company to recover damages for the loss of the services of his wife. In his original petition he alleged the following facts: On December 29, 1904, he and his wife were riding in a buggy along a public street in the town of Culloden. The street crossed the track of the defendant, and, after crossing the track, ran for some distance parallel to the same. As petitioner drove his buggy up to said crossing, he stopped and listened for the train, heard none, and drove over the crossing. If any warning had been given by the ringing of the bell or the blowing of the whistle, he would not have driven upon and over said crossing until the train had passed. While the buggy in which he and his wife were riding was near the track of the defendant and the horse was turning into the street, a freight-train approached the crossing at a rapid rate of speed, without ringing the bell or blowing the whistle or giving any other warning, thereby frightening the horse and causing him to become unmanageable. The horse ran a short distance from the track and then began backing towards the track, and his wife, fearing that he would back on to the track and into the train and cause her death, jumped from the buggy to the ground. He alleges further, that the defendant failed to check and keep checking the speed of said train as it approached the crossing, and failed to ring the bell or blow the whistle; all of which he alleges was negligence; that because of the situation of the public street and the railroad at said place, said place was one in which horses and animals would be frightened at the approach of trains, and the defendant knew this, or would have known it by the exercise of reasonable care, and, in the exercise of reasonable care, should have blown the whistle or rung the bell as the train approached said place; and the failure to ring the bell or blow the whistle as it approached said place was negligence. Each and all of said negligence, it is alleged, caused the injury to plaintiff's wife. The petition fully sets forth

the character of her injuries, her age, the value of her services, and doctors' bills.

To this petition the defendant demurred, generally, on the ground that the petition "does not set forth any cause of action," the demurrer setting forth specifically wherein the petition fails to set forth any cause of action; and demurred specially on the ground that the petition failed to · set forth with sufficient particularity the rate of speed which was complained of. To meet this demurrer the plaintiff amended his declaration as follows: The train was running over the crossing at a rate of 10 or 15 miles an hour. Plaintiff and his wife were riding in his buggy about dark. On their approach to the town of Culloden they crossed the track of the railroad company and turned into a public road, which ran parallel with the track for several hundred yards down to another public crossing, just north of the depot of the defendant. The track and the public road were close to each other. Looking down this road to the depot of the defendant, a person would be unable in the nighttime, and at the hour in which they were traveling, to determine whether the train was moving at all, and if moving, whether it was moving from or towards him, the inability to determine this fact being due to the straightness of the road and the track with reference to the depot. The place on the public road at which the injury occurred was near the public crossing, within the city limits. In view of this fact and the locality of the public road with reference to the track, it was the duty of the company to operate its trains, especially after dark, with such care and diligence, and to have its trains under such control, that they could be stopped at any time in the event travelers along the road were being endangered by their operation; and failure to exercise this care and diligence in this particular case brought about said injuries for which the defendant is liable. It is a rule of the defendant that "when cars are pushed by an engine (except when shifting and making up trains in the yards) a white light must be displayed on the front of the leading car at night." The train which caused the injury was being pushed back by the engine, and there was no light of any character upon the front of the rear car to put the plaintiff upon notice that the train was moving in his direction so that he could be upon his guard and get out of his buggy, or otherwise avoid the danger of

the train; and this failure to comply with said rule was negli-gence. It was the duty of the defendant, in the exercise of rea-sonable care and diligence, when it undertook to operate its trains from the depot back towards Atlanta and over the public cross-ing near the depot and along the highway over which the peti-tioner and his wife were traveling, to have a flagman or other employee on the end of the rear coach, so as to detect any danger to travelers over said road and avoid injuries to them. This was especially true in view of the fact that there was a public cross-ing over said railroad track; and, in any view, it was the duty of the company in operating its trains after night, pushing them back, to have rung the bell, blown the whistle, or to have had a light upon the rear end of said car, or an employee thereon to detect the danger to travelers and avoid injuries to them. Fail-ure to have said light or said employee on the end of said car, or to ring the bell or to blow the whistle, was negligence, for which the defendant was liable in the event of injury resulting.

Although it is alleged that the train approached a public cross-ing at an illegal and rapid rate of speed, without checking the speed or blowing the whistle or ringing the bell, it is clear, from the allegations of the petition as amended, that a violation of the requirements of the public-crossing law is not relied upon as a ground of recovery.. This law is made only for the protection of travelers at or near the crossing; and in this case it is alleged that the plaintiff had left the crossing and was in the public road running parallel with the railroad down to the crossing near the depot. Indeed the crossing over which the plaintiff had driven was not the crossing which it is alleged the defendant approached and ran across without complying with the law. This was the crossing nearer the depot; and it is not alleged that the plaintiff intended to use this crossing; on the contrary, it is apparent that he did not so intend.

It is stated by the learned and eloquent attorney for the de-fendant in error that "the plaintiff put his right to recover, not upon the violation of the statute with reference to public crossings, either within or without the limits of a town, but upon the failure of the defendant to exercise reasonable care and diligence in the operation of its trains after dark, and at the particular place described in the petition and the amendments thereto." At this

time and place, the acts of omission and commission relied upon as constituting negligence may be succinctly summarized as follows. (1) A failure to comply with a rule of the company requiring a white light on the front of the rear car of a backing train; (2) the illegal and rapid rate of speed of the backing train which frightened the horse; (3) the failure of the company to warn the plaintiff that the train was approaching on the track near the parallel highway over which he was traveling with his wife, the time being at night and the plaintiff not being able to discern, on account of the straightness of the track and its parallel relation to the highway, from where he was to the depot, where the train was,—whether it was moving from or towards him; and the place where plaintiff was driving being on a public road in a town, near to the track, and over which it was to be reasonably expected that numbers of people would be traveling. For these reasons it is alleged that ordinary diligence required the defendant to run its trains slowly, to use the white light at the front of the rear car of the backing train, and to give warning signals and keep a lookout for people who might be on this near-by parallel public road.

Do these allegations set forth a cause of action against the defendant company? The test of liability is the existence of some duty, and the proof of liability is the breach of this duty; and both the duty and the breach must be alleged and proved by the plaintiff. Failure to discharge a duty to the plaintiff, and resulting injury to him, are indispensable elements of actionable negligence. As Mr. Justice Lumpkin expresses it, "Relatively to one to whom no diligence whatever is due, there can, in legal contemplation, be no negligence at all in causing him a personal injury, and the measure of diligence due by a railroad company to any person is a relative one, and what is or is not due diligence must be arrived at in every case with reference to the surrounding circumstances and the relation which, for the time being, the company and the person in question occupied towards each other." *Holland* v. *Sparks*, 92 *Ga.* 753, 756, 18 S. E. 990. So the fundamental question in this case is, what duty of diligence did the company owe to the plaintiff at the time and place of the injury? This question must be resolved solely from the allegations of the petition.

It is alleged that the company was negligent in that it violated the following rule of the company: "When cars are pushed by an engine (except when shifting or making up trains in the yard) a white light must be displayed on the front of the leading car at night." It is claimed that the violation of this rule was negligence as to the plaintiff, because the failure to use the white light on the front of the rear car of the backing train prevented him from discovering that the train was backing towards him, so that he could have been upon his guard and gotten out of the buggy and avoided the danger. It is not alleged that the rule was applicable to the facts of the case, or that the cars pushed by the engine were not within the exception to the rule. Indeed it is fairly inferable from the petition that the engine was shifting the cars and making up the train at or near the depot. Besides, it is distinctly alleged that the proximate cause of the injury was the fright of the horse, and that the horse became frightened at the rapid rate of speed of the train. The failure to have the light was therefore not negligence causing the injury, if negligence at all. The allegation that the light would have enabled the plaintiff to avoid the injury is remote and conjectural.

It is next alleged that the "train approached said crossing at a rapid rate of speed, without ringing the bell or blowing the whistle, or giving any warning, thereby frightening the horse and causing him to become unmanageable." Eliminating from this statement any applicability to the public crossing statute, in accordance with the allegations of the petition as amended and the declaration of counsel for defendant in error, we have the situation presented, upon which negligence is based, of a traveler on a public highway, near the railroad, whose horse is frightened by the rapid speed of the train. Of course the negative statement that this illegal and rapid speed was unaccompanied by the blowing of the whistle or the ringing of the bell was not intended as matter of aggravation. The failure to do these things, reasonably considered, diminished the peril of the situation. Therefore the only pertinent and illustrative allegation of negligence is the rapid rate of speed of the train, which frightened the horse on the adjacent highway. An allegation of negligence in respect to the speed of the train can only be material where the law imposes some duty upon the railroad company to regulate

its speed in reference to the place where the train is operated. There is no allegation here that the speed of the train was contrary to any public law, State or municipal. As to a traveler on a highway who did not intend to cross the track, there was no duty imposed upon the railroad company as to the speed of the train. There is no allegation of any unusual and unnecessary noise caused by the running of the train; and so far as this court is advised, the railroad company had the right to run its train on its track at the time and place and with reference to the traveler on the highway, regardless of speed.

The allegation "that the close proximity of the train and the rapid and illegal rate of speed at which it was running made it impossible for the plaintiff or his wife to get out of the buggy in time to avoid injury" does not alter the case. It would be impossible for a railroad company to run its trains in such a manner as to allow travelers on an adjacent highway to get out of vehicles, if horses indicated fright at the approach of trains, and the law does not impose upon railroad companies such an onerous burden or impracticable duty. Fright of horses caused by running trains is one of the necessary risks which travelers on the highways take. Injuries resulting from horses becoming frightened by the appearance of railway cars, trains, or locomotives, or the usual noise incident to their ordinary operation, are damnum absque injuria. Dewey *v.* Chicago, M. & St. P. Ry. Co. 99 Wis. 455, 75 N. W. 74. "A railroad company is not liable for injuries resulting from horses becoming frightened on the highways at the mere sight of its trains or the noises necessarily incident to the running of trains or the operation of the road." 3 Elliott on Railroads, §1264; 2 Thompson on Negligence, §1908.

The plaintiff alleges that on account of the location of the track with reference to the public road and the impossibility for himself or his wife to look down towards the depot where the train was standing or being operated, and to tell whether it was moving towards them, it was the duty of the company, in operating at this point and along this track, to use such care and diligence that its employees would be able to stop the train, if at any time it should appear that travelers and teams were in danger by the operation of its trains; and that such care and diligence required that a railroad company should notify the travelers on the highway

of the approach, either by a light or the ringing of the bell, or having an employee on the front end of the rear car, for the purpose of detecting danger to travelers and avoiding injury to them. In our opinion, railroad companies owe no such degree of diligence to travelers on adjacent highways. The railroad companies have as much right to use their tracks as travelers have to use the highway. It is the duty of travelers on adjacent and near-by public roads to keep a lookout for approaching trains, and to guard against injuries resulting from horses becoming frightened. The traveler is in a much better position to prevent dangerous consequences from frightened horses that the railroads are to prevent the fright of horses. That horses on highways will become frightened at the cars can not be foreseen or prevented by those in charge of running trains. Travelers have such knowledge and such power in the exercise of proper diligence. The law simply imposes upon railroad companies the duty of operating trains relatively to adjacent highways so as not unnecessarily to interfere with the rights of individuals traveling such highways, or to endanger such travelers by unusual and unnecessary noises. The duty of keeping a lookout and of giving warning is limited to the track and the public crossing. It does not extend to travelers on adjacent highways. "A statute which requires railroad companies to give a warning signal of the approach of trains to their crossings of the road or street imposes no duty to give such warning to those who have not lately used, who are not using, and who do not intend to use the crossing; and such parties can not recover of the railroad companies for a failure to give the warning. This record does not tend to prove any negligence on the part of the railroad company. The fact that it failed to give the statutory signal for a crossing is the only evidence of its negligence. It owed no duty to ring its bell or sound its whistle because the plaintiff was driving along the public road, unless that duty was imposed upon it by this statute. In the absence of a statute, it had as much right to use its railroad for its trains, without notice to the plaintiff, as the plaintiff had to use the public road without notice to it." Reynolds v. Great Northern Ry. Co. (C. C. A. 8th ct.), 69 Fed. 808, 16 C. C. A. 435, 29 L. R. A. 695. "The railway company owes to a workman in an adjacent field, to a domestic in a neighboring house, or to a traveler on a parallel road, who

has not crossed and does not. intend to cross or enter upon the railroad, no duty to signal the approach of its train." 69 Fed., supra; Carrington *v.* L. & N. Ry. Co., 88 Ala. 472, 6 So. 910. It is well settled that no negligence can be imputed to a railroad for failure to give warning of approaching trains by reason of the close proximity and paralleling of its right of way to the public thoroughfare. Favor *v.* Boston & Lowell R. Co., 114 Mass. 350, 19 Am. R. 364; Melton *v.* St. Louis Ry. Co., 99 Mo. App. 282, 73 S. W. 232; Bailey *v.* Hartford R. Co., 56 Conn. 444, 16 Atl. 234; Lamb *v.* Old Colony R. Co., 140 Mass. 79, 2 N. E. Rep. 932, 54 Am. R. 449. While we do not think the law imposes upon railroad companies the duty of keeping a lookout or of giving warning to travelers on an adjacent highway of the approach of trains, yet when danger to such traveler is discovered, it then becomes a duty to use care to avert an injury, such care as the then situation would make it practical and possible for the railroad in the proper conduct of its business to use. L. & N. R. Co. *v.* Smith, 107 Ky. 178, 53 S. W. 269; Lamb *v.* R. Co., 140 Mass. 79, 2 N. E. 932; Ala. Great Southern Ry. Co. *v.* Fulton (Ala.), 39 So. 282; L. & N. R. Co. *v.* Schmidt (Ind.), 33 N. E. 774.

In the case now under consideration, the sole allegation of negligence causing the injury is that the running of the train at such a rapid rate of speed caused the fright of the horse. It has been repeatedly held, not only by the Supreme Court of this State, but in many other jurisdictions, that railway companies were not liable for the fright of horses, and injuries resulting therefrom, caused by the running of engines, cars, or trains, unless such running was accompanied by unusual and unnecessary noises. The uniform ruling of the courts on this question is tersely expressed by the decision of the Supreme Court of Pennsylvania in Yingst *v.* Lebanon Street Ry. Co., 167 Pa. St. 438, 31 Atl. 687: "As the right of the defendant company to run its cars on its track is fully equal to the right of the plaintiff to ride in a wagon on the street, the mere fact that the horse took fright at the sight of the cars confers no right of action whatever against the defendant." And in the case of *Douglas v. Ry. Co.,* 88 *Ga.* 282, 14 S. E. 616, the Supreme Court says: "Where the proximate cause of an injury received by a person from a plunging horse which took fright at an approaching train, was the noise made by the

emission of steam by the engine of the train, the railroad company will not be liable in damages to the person so injured unless it appears that the noise was unusual or unnecessary at the time when and place where it was made."

We therefore hold that the allegations of the petition as amended did not set out any facts indicating that the railroad company was chargeable with actionable negligence causing the injury to the plaintiff's wife; and the court should have sustained the demurrer.  *Judgment reversed.*