[No. 24118. Department Two. December 28, 1932.]

ANDERS HIGHLAND et al., Respondents, v. WILSONIAN INVESTMENT COMPANY, Appellant.[1]

[1]Reported in 17 P. (2d) 631.

*John W. Heal, Jr.,* and *Poe, Falknor, Falknor & Emory,* for appellant.

*Vanderveer & Bassett,* for respondents.

TOLMAN, C. J.—This is an action for personal injuries sustained by plaintiff Lena Highland and claimed to be the result of negligence of the defendant. A verdict was returned for plaintiffs, upon which judgment was entered. Defendant appeals.

The appellant is the owner of property known as the Wilsonian hotel, located on University way in Seattle. A portion of the ground floor was leased to Helen Swope, who operated a restaurant known as the Via Fontana. The entrance to the restaurant was reached by a tile walk, about forty feet long, from University way. Over and about ten feet above this walk was a glass roof or marquise.

The ground floor of the leased premises was divided into a dining room and kitchen. Over the kitchen, and about ten feet above it, was a mezzanine floor, which was divided into several rooms by partitions which did not reach the ceiling. These rooms were off a hall, about four feet wide by twenty in length, at one end of which was a room used as a bakery in connection with the restaurant. At the other end of the hall was a room in which was located an ammonia ice machine. By the terms of the lease, however, this ice machine was retained under the exclusive control and supervision of appellant, the lease providing:

"The lessee shall not interfere, or with her knowledge, permit others in or about the demised premises to in any manner interfere, with the refrigeration . . . or the appliances for applying the same . . ."

On August 2, 1930, a plug or nipple blew out of the crank-case of the ice machine. Almost immediately,

ammonia fumes permeated the bakery and kitchen. At the time, Jane Damon was working in the bakery and respondent Mrs. Highland, Iva Zieke and Herman Houson were working in the kitchen, all of whom were employees of Helen Swope.

The ammonia fumes were so strong that Mrs. Damon wrapped a towel around her head and went downstairs into the dining room. The others left the kitchen and also went into the dining room for the same reason. Mrs. Damon had heart trouble, which all the others knew about. That morning, she had said that she was not feeling well. Mrs. Damon went to the door of the dining room for fresh air, and while she was there she was having trouble breathing. Mrs. Zieke thought she was having a heart attack, and gave her a glass of water.

After a few minutes, Mrs. Damon remarked that something in the oven might burn, and then left the dining room. A few minutes later the others became alarmed about her, and asked Raymon, a Filipino boy, to go up and see if she was all right. Raymon refused to go. Mrs. Highland then went to the kitchen, shut the door of the ice box from which fumes were coming, turned off the gas stove, and then went up to the bakery, where she found Mrs. Zieke and Houson, who had preceded her. All three testified they were prompted to go to the bakery by the fear that Mrs. Damon might have been overcome by the ammonia fumes.

The fumes were so bad in the bakery that a window which hung on hinges, attached to the lower sill, was opened wide to let in air. The bottom of this window, which was thirty-three inches high and forty-four inches wide, was close to the floor and, when opened wide, the window was held parallel to the floor by chains attached to the side sashes at the top. The win-

dow opened on to the glass roof, or marquise, over the walk leading from University way to the entrance of the Via Fontana.

To escape the fumes, Mrs. Zieke stepped through the window onto the marquise. Shortly after, for the same reason, Mrs. Highland followed her. The glass broke under the weight of Mrs. Highland, and she fell through to the walk below, sustaining the injuries here complained of.

The appellant challenged the sufficiency of the evidence at the close of the respondents' case; also at the close of all the testimony, and interposed a motion for judgment notwithstanding the verdict. The only assignments of error go to the denials of the challenges and the motion for judgment notwithstanding the verdict, no motion for new trial having been interposed.

The contentions of appellant may be classified under three heads: (1) There was no proof of negligence; (2) the blowing out of the nipple in the ice machine was not the proximate cause of the injuries; and (3) Mrs. Highland was guilty of contributory negligence as a matter of law.

The evidence showed that the ice machine was under the exclusive control and supervision of appellant. It is pointed out that appellant's manager testified that Helen Swope and her employees tampered with the machine. There is no proof of any fact which supports this assertion. There is nothing to indicate how or when they tampered with it. Nor was there any evidence offered that tended to show how or why the nipple blew out, except that offered by respondents to the effect that the nipple was old, rusty and cross-threaded. This nipple plugged an aperture in the crank-case where the oil was drawn off. Nobody but the agents of appellant ever had occasion to touch

it; and the record does not show that anybody else ever did touch it.

The rule, under such circumstances, is:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." 1 Shearman & Redfield on Negligence (6th ed.), § 59; *Wodnik v. Luna Park Amusement Co.*, 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N. S.) 1070.

Proof of regular inspection of the machine still leaves the question of negligence one for the jury. *Lane v. Spokane Falls & Northern Railway Co.*, 21 Wash. 119, 57 Pac. 367, 75 Am. St. 821, 46 L. R. A. 153. The presumption is overcome as a matter of law only when the explanation shows, without dispute, the happening was due to a cause not chargeable to defendant's negligence. *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870.

Nor does the allegation and proof of specific negligence deprive a plaintiff of the benefit of the rule. *Walters v. Seattle, Renton & Southern R. Co.*, 48 Wash. 233, 93 Pac. 419, 24 L. R. A. (N. S.) 788; *Kluska v. Yeomans*, 54 Wash. 465, 103 Pac. 819, 132 Am. St. 1121. There is nothing said in the case of *Anderson v. Northern Pacific R. Co.*, 88 Wash. 139, 152 Pac. 1001, L. R. A. 1917F, 1020, which conflicts with the foregoing statement of the rule. It is true, language was used in *Osborne v. Charbneau*, 148 Wash. 359, 268 Pac. 884, 64 A. L. R. 251, which might be construed in conflict with the above statement, but it was unnecessary to the decision and is clearly *obiter*.

The questions of proximate cause and con-

tributory negligence can be better discussed together than separately.

The contention is that, Mrs. Highland, Mrs. Damon, Mrs. Zieke and Houson having escaped the fume-laden air of the kitchen and bakery and having reached a place of safety, the proximate and intervening cause of the injuries was Mrs. Damon's return to the place of danger, i. e., the bakery. It is also contended that, in following her for the purpose of rescue, Mrs. Highland was guilty of contributory negligence, as a matter of law.

The proximate cause is the cause without which the accident could not have happened. *Wodnik v. Luna Park Amusement Co., supra.* What caused Mrs. Highland to step out on the marquise was the presence of ammonia fumes in the bakery. The ammonia fumes were in the bakery because the plug or nipple in the crank-case of the ice machine blew out. The nipple blew out because of the negligence of appellant.

The reason that Mrs. Highland went to the bakery was because she thought Mrs. Damon's life was endangered by the fumes. The dangerous situation was caused by the fumes, not by Mrs. Damon's return to the bakery. The proximate cause of injury to the rescuer in such cases is the negligence of the person who created the dangerous situation. *Bond v. Baltimore & Ohio Railroad Co.,* 82 W. Va. 557, 96 S. E. 932, 5 A. L. R. 201; *Maryland Steel Co. v. Marney,* 88 Md. 482, 42 Atl. 60, 71 Am. St. 441, 42 L. R. A. 842; *Perpich v. Leetonia Mining Co.,* 118 Minn. 508, 137 N. W. 12.

The authorities are practically unanimous to the effect that one who imperils himself in order to rescue a person who is in danger of being injured or killed through the negligence of another person, may recover damages from the negligent person for injuries received while effecting such rescue. *Eckert v. Long*

*Island Railroad Co.,* 43 N. Y. 502, 3 Am. Rep. 721; *Corbin v. City of Philadelphia,* 195 Pa. 461, 45 Atl. 1070, 78 Am. St. 825, 49 L. R. A. 715; *Maryland Steel Co. v. Marney,* 88 Md. 482, 42 Atl. 60, 71 Am. St. 441, 42 L. R. A. 842; *Pennsylvania Co. v. Langendorf,* 48 Ohio State 316, 28 N. E. 172, 29 Am. St. 553, 13 L. R. A. 190; *Mobile & Ohio Railroad Co. v. Ridley,* 114 Tenn. 727, 86 S. W. 606; *Saylor v. Parsons,* 122 Iowa 679, 98 N. W. 500, 64 L. R. A. 542, 101 Am. St. 283; *Bond v. Baltimore & Ohio Railroad Co.,* 82 W. Va. 557, 96 S. E. 932, 5 A. L. R. 201; *Wagner v. International Railway Co.,* 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1.

In the last cited case, Justice Cardozo said:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. . . .

"The defendant says that we must stop, in following the chain of causes, when action ceases to be 'instinctive.' By this, is meant, it seems, that rescue is at the peril of the rescuer, unless spontaneous and immediate. If there has been time to deliberate, if impulse has given way to judgment, one cause, it is said, has spent its force, and another has intervened . . . We find no warrant for thus shortening the chain of jural causes . . . The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion."

It may have been negligence for Mrs. Damon, after having reached a place of safety, to return to the place of danger, but her negligence can not be imputed to Mrs. Highland. *Bond v. Baltimore & Ohio Railroad Co., supra; Pierce v. United Gas & Electric Co.,* 161

Cal. 176, 118 Pac. 700; *Norris v. Atlantic Coast Line Railroad Co.,* 152 N. C. 505, 67 S. E. 1017, 27 L. R. A. (N. S.) 1069. In the last case cited, it is said:

"This being true, it is well established that when the life of a human being is suddenly subjected to imminent peril through another's negligence, either a comrade or a bystander may attempt to save it, and his conduct is not subjected to the same exacting rules which obtain under ordinary conditions; nor should contributory negligence on the part of the imperiled person be allowed, as a rule, to affect the question. It is always required in order to establish responsibility on the part of defendant, that the company should have been in fault, but, when this is established, the issue is then between the claimant and the company; and when one sees his fellow-man in such peril he is not required to pause and calculate as to court decisions, nor recall the last statute as to the burden of proof, but he is allowed to follow the promptings of a generous nature and extend the help which the occasion requires; and his efforts will not be imputed to him for wrong, according to some of the decisions, unless his conduct is rash to the degree of recklessness; and all of them hold that full allowance must be made for the emergency presented.

"This principle is declared and sustained in many well-considered and authoritative decisions of the courts and by approved text-writers, and prevails without exception, so far as we have examined."

It is further contended that Mrs. Damon was not in any real peril or danger, and that there was no necessity for Mrs. Highland going to her rescue, particularly in view of the fact that Mrs. Zieke and Houson had already gone up to the bakery. Her conduct in this respect was to be measured by the standard of reasonable care under the circumstances, and presented a question to be submitted to the jury under proper instructions. The rule is stated in 45 C. J. on page 968 as follows:

"It requires more than a suspicion that an accident might happen to justify one to incur obvious danger on the theory that human life or limb was in imminent peril. The rule under consideration is inapplicable where no one is in imminent danger, and the circumstances afford no reasonable basis for believing otherwise. It is sufficient, however, that some one was in danger, although, at the moment the effort to rescue was made, the danger was not imminent to a definite person, and even though no danger was actually imminent, the rule is applicable to one who acts on appearances, if his conduct was that of an ordinarily prudent man under the circumstances."

In *Dixon v. New York, N. H. & H. R. Co.*, 207 Mass. 126, 92 N. E. 1030, it is stated:

"It is true, as was held in *Linnehan v. Sampson*, 126 Mass. 506 [30 Am. Rep. 692], and in many of the other cases above cited, that it is for the jury to say, upon all the circumstances, including the existing emergency and the need of immediate action under which they may find that the plaintiff acted, whether in fact his conduct was that of a reasonably prudent man; . . ."

Even though it subsequently eventuates that there was no real danger, the action is not barred on the ground of contributory negligence. *Thoresen v. St. Paul & Tacoma Lumber Co.*, 73 Wash. 99, 131 Pac. 645, 132 Pac. 860, where it is said:

"He [the plaintiff] was entitled to act upon appearances, and if his conduct was that of a reasonably prudent person under the circumstances, he is not to be charged with contributory negligence even though he may have been deceived thereby."

It is not for us to say, as a matter of law, whether Mrs. Damon's peril was real or not, or that it was not so apparent as to excite a person of ordinary humanitarian instincts to take action. It seemed real and imminent enough to cause three people to go to her rescue. Whether or not Mrs. Highland knew that Mrs.

Zieke and Houson had preceded her to the bakery, we think, is immaterial now, though the answer to this question might have weight with a jury. One bent on the rescue of a person in peril is not likely to count the other would-be rescuers. Failure to do so could hardly be held to be contributory negligence as a matter of law.

 Finally, it is contended that Mrs. Highland was guilty of contributory negligence in stepping through the window onto the marquise. The argument is that she had been passing under it several times a day for three years, and should have known it was glass and that it would probably break under her weight. The answer is that Mrs. Zieke had preceded her through the window, and was standing on the marquise in apparent safety. It is not sufficient, to charge Mrs. Highland with negligence as a matter of law, to say that she should have realized that she was heavier than Mrs. Zieke, and that what the latter might do with safety she could do only at the risk of life or limb. The law does not impose such discriminating refinement of observation and reasoning upon a person of ordinary intelligence and prudence under such circumstances.

The evidence being sufficient to take the case to the jury, the judgment must be, and it is, affirmed.

MILLARD, MAIN, and BEALS, JJ., concur.