[No. 30508. Department Two. August 6, 1948.]

LESTER A. MORNER *et al., Respondents,* v. UNION PACIFIC
RAILROAD COMPANY, *Appellant,* JOE FIORITO *et al.,*
*Defendants.*

GRACE STITH, *Respondent,* v. UNION PACIFIC RAILROAD COM-
PANY, *Appellant,* JOE FIORITO *et al., Defendants.*[1]

[1]Reported in 196 P. (2d) 744.

*Merritt, Summers & Bucey* and *Roscoe Krier* (*Roy F. Shields*, of counsel), for appellant.

*Morrissey & Eagen* and *Lee Olwell*, for respondents.

STEINERT, J.—Plaintiffs brought separate actions against defendants to recover damages for personal injuries resulting from a collision between an automobile in which plaintiffs were riding as passengers and a truck owned by defendants Fiorito and driven by their employee, defendant Jesse Helton. The collision occurred at a point on a highway where, at the time, both motor vehicles were temporarily enveloped in a cloud of steam which had been emitted by a railroad locomotive owned and operated by defendant Union Pacific Railroad Company and traveling on a track adjacent to the highway.

The two actions were, on motion of defendants Fiorito and Helton, consolidated for purposes of trial and appeal, and were tried to the court sitting with a jury. At the close of plaintiffs' case, the trial court sustained the challenge of the defendants Fiorito and Helton to the sufficiency of the evidence as to them and dismissed both actions in so far as they were concerned. At the conclusion of all the evidence, the defendant Union Pacific Railroad Company moved for directed verdicts in both actions. The motion was denied, and the cause was submitted to the jury, which returned verdicts in favor of both plaintiffs. Motion for judgment notwithstanding the verdicts or, in the alternative, for a new trial was interposed by the defendant railroad company and was denied. Judgment was thereupon entered on the verdicts, and the railroad company appealed.

The accident out of which these actions arose occurred on east Marginal way, in Seattle, near the point where that thoroughfare would be intersected by Findlay street, were the latter street extended westwardly. In this vicinity, east Marginal way extends generally in a northerly-southerly direction. It consists of two strips of pavement separated from each other by a twenty-three-foot strip of center, graveled roadway. The easterly strip, built of concrete and twenty feet wide, is used by northbound traffic; the westerly strip, paved with brick and twenty-one feet in width, is used by southbound traffic.

Parallel to east Marginal way in this same vicinity, and nine feet west of the westernmost portion thereof, is a standard gauge railroad track approximately four feet eight inches in width; eight feet west of this track, and parallel to it, is another railroad·track of standard gauge. The two tracks are, within a few inches, at the same level as the brick pavement. The testimony indicates that the easterly railroad track is a spur track, and that the westerly track is the main line. The entire area described above is, for all practical purposes, flat and level.

At approximately seven-thirty a. m., on March 6, 1944, the defendant Jesse Helton, an employee of defendants Fiorito, was driving a Mack truck south along east Marginal way, on the westerly portion of the westerly strip of pavement, which was immediately adjacent to the railroad tracks. The truck had a capacity of five cubic yards and was loaded with sand and gravel. Helton was alone and was driving at a speed of twenty or twenty-five miles an hour. The pavement was dry, visibility was good, and the atmospheric temperature registered approximately 33° Fahrenheit.

A railroad locomotive, owned by appellant, Union Pacific Railroad Company, was proceeding in the same direction, some distance ahead of the truck, and was pulling a "drag" of seven freight cars. The locomotive and freight cars were traveling along the easterly railroad track, on the west, or right-hand side, of the truck, at a speed of four or five miles an hour.

Respondents Mildred M. Morner and Grace Stith, to whom we shall hereinafter refer as though they alone were respondents, were also traveling south on east Marginal way, along the westerly portion of the westerly strip of pavement, but some distance back of both the locomotive and the truck. They were riding as paying passengers, under the so-called "Share-a-ride plan," in a 1930 Model A Ford coupe owned and being driven by one Mrs. Jeanne Shallow, and were on their way to work at the Boeing aircraft plant. Mrs. Morner was sitting in the middle of the

seat, next to the driver, and Mrs. Stith occupied the extreme right-hand side thereof. The Ford coupe was traveling at a speed of twenty-five or thirty miles an hour.

Immediately prior to the time of the accident, the railroad locomotive and the two motor vehicles were traveling in the direction and at the respective rates of speed described above, and were occupying approximately the following relative positions: The locomotive, traveling on the easterly railroad track, was eighty feet north of the intersection of Findlay street and east Marginal way. The truck, traveling along its right-hand portion of the westerly strip of pavement of east Marginal way, was twenty feet from the rear, and to the east, or on the left-hand side, of the locomotive. The Ford coupe was fifty feet back of the truck, also to the east, or on the left-hand side, of the locomotive. Mrs. Shallow, driver of the Ford, was preparing to pass the truck and had moved over to her left, or eastwardly, so that the Ford was slightly to the west of the center line of the westerly strip of pavement of east Marginal way.

While the locomotive and the two motor vehicles were in these relative positions, a large quantity of steam emanated from the locomotive and enveloped an area extending along east Marginal way for approximately one hundred feet or more and covering the entire westerly strip of pavement. By reason of its density, the steam precluded all visibility within its area.

As Helton, the driver of the truck, entered the cloud of steam, he slackened his feed of gasoline and then gradually applied his brake. In this manner, he proceeded approximately one hundred feet into the enveloping cloud. As Mrs. Shallow entered the clouded area, she too applied her brake, slowly reducing her speed. While both the truck and the Ford coupe were thus traveling through this cloud of emitted steam, the right front end of the coupe struck the left rear end of the truck, causing the coupe to come to an immediate stop and, by the force of the impact, damaging it to such an extent that it was later sold for junk.

The truck was brought to a stop a few feet south of the point of collision and was not damaged. The locomotive continued on its way down the track. It appears that none of the train crew was aware of the accident at the time and did not learn of it until the following day.

As a result of the collision between the two motor vehicles, both respondents were seriously injured and were taken to a hospital.

The evidence is in serious conflict on only one point of fact, that is, whether, as contended by appellant, the steam was properly emitted, through the injector valve of the locomotive, in its normal and usual operation, or whether, as contended by respondents, the steam was negligently ejected from the cylinder cocks of the locomotive or else through the injector valve in an excessive and unreasonable amount, either of which respondents allege was not a necessary, normal, or usual operation of the locomotive at the time here involved. The parties are in agreement as to all other facts, except for slight discrepancies respecting the relative distances between the three moving vehicles prior to the accident, and as to the actual point of collision.

Appellant's contentions during the trial were, and now are: (1) that Mrs. Shallow, driver of the Ford coupe, was guilty of negligence which was the proximate cause of the accident, in that, when she observed the cloud of steam ahead of her, she had ample time and room in which to stop her car and thus avoid the collision, but negligently failed to do so; (2) that the presence of the steam upon the highway was but a condition, and not a cause of the accident; and (3) that the steam was properly emitted from the locomotive through its injector valve, in the course of its normal and necessary operation.

Respondents' contentions were, and now are: (1) that Mrs. Shallow was guilty of no negligence, and that none of her acts was the proximate cause or a concurring cause of the accident; (2) that the proximate cause of the accident was the presence of the cloud of steam upon the highway; and (3) that the steam was negligently emitted from the

locomotive either through its cylinder cocks or through its injector valve in excessive amounts.

The question of contributory negligence on the part of the respondents was expressly withdrawn from the jury by an instruction given by the trial court, to which no exception was taken.

Appellant first assigns as errors the refusal of the trial court to grant appellant's motions for directed verdicts and for judgment notwithstanding the verdicts. Appellant contends that, even though it may have negligently emitted the steam from the cylinder cocks, or improperly through the injector valve, of its locomotive, nevertheless the undisputed facts show that Mrs. Shallow's negligence in driving her car into the cloud of steam was the proximate cause of the damage and injury to respondents, and that the steam was only a condition.

█ Whether Mrs. Shallow was, under the circumstances, negligent in driving into the clouded area or in failing to bring her car to a stop before colliding with the truck, and whether her act in the one respect or her failure to act in the other respect was the proximate cause of the injuries to the respondents, were clearly, in our opinion, questions for the jury to decide. Hence, there was no error in denying these two motions of the appellant.

The principal question involved in this appeal is presented under appellant's fifth assignment of error, relating to an instruction given by the trial court on the subject of *res ipsa loquitur*, reading as follows:

"You are instructed that the burden of proof is upon the plaintiffs [respondents] to establish all of the controverted allegations of their complaints by a fair preponderance of the evidence. If you find from a preponderance of the evidence that the emission of steam from the locomotive in the manner in which it was released upon the highway was such as in the ordinary course of events would not happen if those who have the management of said locomotive use reasonable and ordinary care, you are entitled to presume a want of care on the part of the Railroad Company through

its agents and employees in the absence of explanation by the defendant [appellant] Railroad Company."

Appellant contends that the doctrine of *res ipsa loquitur* is not applicable in this case, for two reasons: (1) because it is clear from the evidence upon which respondents relied that the accident in question was the result of a definite cause; and (2) because the accident might reasonably have occurred as the result of acts for which the appellant would not be liable.

■ The doctrine of *res ipsa loquitur*, an expression which, literally translated, means "the thing speaks for itself," as applied in this state and most jurisdictions is as follows: When the agency or instrumentality which caused the injury complained of is shown to have been under the exclusive control and management of the defendant or his servants, and the accident, or injurious occurrence, is such as in the ordinary course of events does not happen if those who have the control and management of the agency or instrumentality use proper care, the injurious occurrence of itself, in the absence of explanation by the defendant, affords reasonable evidence, or a permissible inference, that such occurrence arose from or was caused by the defendant's want of care. *Anderson v. McCarthy Dry Goods Co.,* 49 Wash. 398, 95 Pac. 325, 126 Am. St. 870, 16 L. R. A. (N.S.) 931; *Lewinn v. Murphy,* 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912D, 433, L. R. A. 1917E, 198; *Poth v. Dexter Horton Estate,* 140 Wash. 272, 248 Pac. 374; *Brothers v. Grays Harbor Bldg. Co.,* 152 Wash. 19, 276 Pac. 896; *Highland v. Wilsonian Inv. Co.,* 171 Wash. 34, 17 P. (2d) 631; *Anderson v. Harrison,* 4 Wn. (2d) 265, 103 P. (2d) 320; *Mahlum v. Seattle School Dist. No. 1,* 21 Wn. (2d) 89, 149 P. (2d) 918; *Pacific Coast R. Co. v. American Mail Line,* 25 Wn. (2d) 809, 172 P. (2d) 226; 38 Am. Jur. 989, Negligence, § 295; 45 C. J. 1193, Negligence, § 768; 9 Wigmore, Evidence (3d ed.), § 2509; 1 Shearman and Redfield, Negligence (Rev. ed.) 151, § 56. See, also, 13 Wash. L. Rev. 215.

■ This doctrine constitutes a rule of evidence peculiar to the law of negligence and is an exception to, or perhaps

more accurately a qualification of, the general rule that negligence is not to be presumed, but must be affirmatively proved. By virtue of the doctrine, the law recognizes that an accident, or injurious occurrence, may be of such nature, or may happen under such circumstances, that the occurrence is of itself sufficient to establish *prima facie* the fact of negligence on the part of the defendant, without further or direct proof thereof, thus casting upon the defendant the duty to come forward with an exculpatory explanation, rebutting or otherwise overcoming the presumption or inference of negligence on his part. *Lynch v. Ninemire Packing Co.*, 63 Wash. 423, 115 Pac. 838, L. R. A. 1917E, 178; *Penson v. Inland Empire Paper Co.*, 73 Wash. 338, 132 Pac. 39, L. R. A. 1915F, 15; 38 Am. Jur. 994, Negligence, § 298; 45 C. J. 1196, 1219, Negligence, §§ 769, 783.

The doctrine of *res ipsa loquitur* is based in part upon the theory that the defendant, having the sole and exclusive charge of the agency or instrumentality which caused the injury, knows the cause of the accident, or injurious occurrence, or has the best opportunity of ascertaining it, and should, therefore, be required to produce the evidence in explanation thereof, while, on the other hand, the plaintiff has no such knowledge and is, therefore, compelled to allege negligence in general terms and to rely upon proof of the happening of such occurrence to establish negligence.

This theory of superior knowledge is stated in 45 C. J. 1205, Negligence, § 773, as follows:

"The reason or theory of the doctrine of res ipsa loquitur is based in part upon the consideration that, as the management and control of the agency which produced the injury is, under the circumstances to which the doctrine applies, exclusively vested in defendant, plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, while defendant, being more favorably situated, possesses the superior knowledge or means of information as to the cause of the accident, and should, therefore, be required to produce the evidence in explanation. Accordingly if the circumstances do not suggest or indicate superior knowledge

or opportunity for explanation on the part of the party charged or if plaintiff himself has equal or superior means of information, the doctrine cannot be invoked."

In 38 Am. Jur. 995, Negligence, § 299, a summary of the decisions touching the matter of superior knowledge is set forth in the following paragraph:

"The res ipsa loquitur doctrine is based in part upon the theory that the defendant in charge of the instrumentality which causes the injury either knows the cause of the accident or has the best opportunity of ascertaining it, and that the plaintiff has no such knowledge, and therefore is compelled to allege negligence in general terms and to rely upon the proof of the happening of the accident in order to establish negligence. The inference which the doctrine permits is grounded upon the fact that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to the defendant but inaccessible to the injured person. If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply."

A similar expression, by this court, is found in *Lynch v. Ninemire Packing Co., supra*, where we said:

"The maxim of *res ipsa loquitur* is applied in negligence cases on the theory that the accident, in the light of surrounding circumstances, is of such a character as to raise a presumption of negligence from the occurrence itself; and on the further theory, that the injured party is not in a position to explain its cause; while the party charged, having more favorable opportunities, is in a position to thus explain and show himself free from negligence, if such be the case. If the circumstances do not suggest or indicate superior knowledge or opportunity for explanation on the part of the party charged, or if the plaintiff himself has equal or superior means of information, the doctrine will not apply."

■ While the theory upon which the doctrine of *res ipsa loquitur* rests is well understood, there is no fixed, general rule determining its applicability in all cases, nor can any exact classification be made of the instances in which the maxim as a rule of evidence is to be applied.

Whether or not the doctrine is applicable in a specific instance depends upon the peculiar facts and circumstances of the individual case. *McClellan v. Schwartz*, 97 Wash. 417, 166 Pac. 783.

■ With reference to the application of the doctrine, this court, in common with many others, has held that while the maxim, when properly applied, is of value in the administration of justice, its scope is nevertheless limited, and ordinarily it is to be sparingly applied, in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential. *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 126 Am. St. 870, 16 L. R. A. (N.S.) 931; *Lewinn v. Murphy*, 63 Wash. 356, 115 Pac. 740, Ann. Cas. 1912D, 433, L. R. A. 1917E, 198; *Pacific Coast R. Co. v. American Mail Line*, 25 Wn. (2d) 809, 172 P. (2d) 226. Accord: *Mahlum v. Seattle School Dist. No. 1*, 21 Wn. (2d) 89, 149 P. (2d) 918; *Wellons v. Wiley*, 24 Wn. (2d) 543, 166 P. (2d) 852.

In the case of *Pacific Coast R. Co. v. American Mail Line*, *supra*, we quoted approvingly the following paragraph taken from 45 C. J. 1200, Negligence, § 771:

" 'Application of Doctrine. The doctrine of res ipsa loquitur, now a familiar rule of practice in the trial of negligence cases, which is frequently recognized and applied without specifically naming it, is not a rigid or arbitrary formula, but a rule that adjusts itself to circumstances. However, as it is not the naked injury but the manner and attending circumstances of the accident that justify the application of the doctrine in an action for the negligent breach of an ordinary duty, it follows, as a matter of course, that the applicability of the doctrine must depend upon the peculiar facts and circumstances of each individual case, and consequently that no rule of general application can be laid down nor exact classification made as to when it may or may not be properly applied. Furthermore, while the application of the doctrine is considered to be in the aid of the fair administration of justice, and not unjust to defendant, it has been held that the doctrine is of limited and restricted scope ordinarily to be applied sparingly and with caution in peculiar and exceptional cases, and only where the facts and demands of justice make the application essential.' "

See, also, 38 Am. Jur. 998, Negligence, § 301.

Having in mind the nature, purpose, scope, and limitations of the doctrine of *res ipsa loquitur* as above set forth, we shall next consider the matter of its applicability in the instant case.

Since the applicability of the doctrine depends upon the facts of the particular case, it is pertinent to observe here that the injuries of which respondents complain were not sustained immediately and directly through contact with, or operation of, the locomotive itself, nor by contact with the steam which the locomotive emitted upon the adjacent highway. The injuries to them were the direct and immediate result of a collision between the two motor vehicles operating independently of the locomotive. Whether the steam be regarded merely as a condition, or whether it be considered to be a proximate cause of the collision, the fact is that respondents' injuries resulted directly and solely from a collision between the Ford coupe and the truck.

Appellant had no control over the operation or management of either of these two motor vehicles. Even if it be assumed, as the respondents contend, that the steam was a proximate cause of the injurious occurrence, nevertheless appellant did not have control of all of the instrumentalities which together produced the physical injuries.

■ As appears from the definition given above of *res ipsa loquitur*, one of the elements essential to the invocation of that doctrine is that the party charged with actionable negligence must have sole and exclusive control of the agency or instrumentality which actually caused the injury. If there is no such exclusive control, or if the injury was caused, or may reasonably be said to have been caused, by the concurrent acts of two or more persons or agencies functioning independently of each other, the doctrine does not apply.

In 1 Shearman & Redfield, Law of Negligence (6th ed.), 131, § 58b, it is said, with reference to the applicability of the doctrine:

"Certain conditions must concur. The causative force of the injury must be shown to be controlled by the defend-

ant; it must also appear that there was no other equally efficient proximate cause. If from the nature of the event causing the injury an enquiry naturally arises which one of two or more persons, acting independently, is responsible; or, if it appear that the injury was proximately caused by the independent acts of two or more persons, the application of the maxim is excluded by its terms. Finally, it must appear that the cause of the injury was something out of the usual order."

In 1 Shearman and Redfield, Negligence (Rev. ed. 1941), 153, § 56, it is stated:

"Control is a necessary prerequisite to application of the rule of *res ipsa loquitur*. The rule is predicated, amongst other things, upon the condition that the agency which has produced an injury is within the exclusive possession, control and oversight of the person sought to be charged with negligence.

"The wrongdoer must be identified. The circumstances of an accident may permit an inference or give rise to a presumption that someone has been negligent, but not that any particular person rather than another has been negligent."

A wealth of cases will be found in 45 C. J. 1214, Negligence, § 781, supporting the statement therein that:

"As a necessary basis for the application of the doctrine, it must appear, in conformity with the statements of the rule, that the negligent cause or thing which produced the injury complained of was wholly and exclusively in the possession, and under the control or management, of defendant or his servants. Accordingly the doctrine cannot be invoked where there is a divided responsibility and the accident is due in part to the act of a third party over whom defendant has no control, or where the injuring agency is partly or entirely under the control or management of plaintiff."

Accord: *Lynch v. Ninemire Packing Co., supra.*

Also, in 8 Encyclopaedia of Evidence 872 *et seq.*, we find the following statements:

"That a presumption of negligence may arise from the very nature of the efficient cause of the damage, certain conditions precedent must concur, as follows: . . .

"First, the immediate cause of the accident must clearly appear to be under the control of defendant or those for whom he is responsible. . . .

"Second, there must be no other equally proximate, apparent cause of the accident besides that for which defendant is responsible. So where the acts or omissions of two or more independent persons are apparently equally immediate causes of an injury, the negligence of neither of such persons can be presumed. . . .

"Third, the cause of the damage must be either an act of defendant's or of those for whom he is responsible that, if proper care is used, is ordinarily performed without damage to others, or the operation of a thing for which· the defendant is responsible that is ordinarily, with proper care, operated without damage to others."

The foregoing passage was quoted in *Yellow Cab Co. v. Hodgson*, 91 Colo. 365, 14 P. (2d) 1081, 83 A. L. R. 1156.

In 38 Am. Jur. 997, Negligence, § 300, occurs the following statement:

"If it appears that two or more instrumentalities, only one of which was under defendant's control, contributed to or may have contributed to the injury, the doctrine cannot be invoked."

In support of this statement, the text cites the following cases: *Sawyer v. People's Freight Lines*, 42 Ariz. 145, 22 P. (2d) 1080; *Olson v. Whitthorne & Swan*, 203 Cal. 206, 263 Pac. 518, 58 A. L. R. 129; *Yellow Cab Co. v. Hodgson, supra.*

The reason for the prerequisite of exclusive control of the offending instrumentality is that the purpose of the rule is to require the defendant to produce evidence explanatory of the physical cause of an injury which cannot be explained by the plaintiff. If the defendant does not have exclusive control of the instrumentality producing the injury, he cannot offer a complete explanation, and it would work an injustice upon him to presume negligence on his part and thus in practice demand of him an explanation when the facts indicate such is beyond his ability.

█ Since, in our opinion, the evidence clearly demonstrates that the injurious occurrence here involved resulted or could have resulted from the operation of one or more agencies or instrumentalities, or from several independent

agencies or instrumentalities operating concurrently, the doctrine of *res ipsa loquitur* was not applicable.

■ However, assuming for the purposes of this decision that, under the theory of the respondents' complaints and the evidence adduced by them in support thereof, the doctrine was applicable to the extent of taking the case beyond a nonsuit, and thereby casting upon the appellant the burden of producing explanatory evidence as required by the rule, the question then arises whether, at the conclusion of all the evidence, it was necessary or proper to submit the doctrine to the jury under instructions by the court.

The record in this case discloses that respondents not only pleaded specific acts of negligence on the part of appellant, but also produced considerable evidence in support of such allegations. In fact, the issues on that subject were sharply drawn. Respondents contended, and their evidence was to the effect, that the steam which covered the highway and enveloped the two motor vehicles was ejected from the cylinder cocks of the locomotive, or else was expelled from the injector valve of the engine in such amount as under the circumstances was unusual, unnecessary, unreasonable, and dangerous to travelers upon the highway. Appellant, on the contrary, contended, and its evidence was to the effect, that the steam was emitted, not from the cylinder cocks of the locomotive, but from its injector valve, and only in such amount as was consistent with the practical and normal operation of its locomotive. Thus, from the evidence and the contentions of the parties, it is clear that the steam came either from the cylinder cocks or from the injector valve of the locomotive.

In our opinion, the evidence is also conclusive, and neither counsel contends to the contrary, that, if the steam was discharged from the cylinder cocks, it would not have been a usual and normal operation of the locomotive at the particular time and place, and such discharge would have constituted negligence on the part of the appellant. Furthermore, if the steam was ejected through the injector valve, but in an amount that was unusual, un-

necessary, and unreasonable under the circumstances, that too would have constituted negligence. On the other hand, if the steam was emitted from the injector valve in a normal, necessary, and reasonable manner, appellant would not be guilty of any actionable negligence. Therefore, the sole question for the jury to decide regarding the emission of the steam was whether it was ejected in the manner as contended by respondents or in the manner as contended by the appellant.

The decision of that question by the jury was all that was necessary to determine the liability or nonliability of the appellant. In other words, upon the case made by the respondents, and under all the evidence produced before the jury, there was nothing upon which the doctrine of *res ipsa loquitur* need or could operate. There was nothing further left calling for explanation by the appellant as to the cause of the injurious occurrence. The evidence was so completely explanatory as to how the steam was allowed to escape or could have escaped that it left no room for an inference that it might have escaped in some other, undisclosed manner for which appellant would be responsible.

We are cognizant of the rule, adopted and frequently declared by this court, that even though a plaintiff should base his action upon the doctrine of *res ipsa loquitur,* he may plead and prove specific acts of negligence on the part of the defendant and may rely upon the presumption of negligence and, also, upon his proof of specific acts of negligence, in support of his right to recover. *Walters v. Seattle, Renton & Southern R. Co.,* 48 Wash. 233, 93 Pac. 419, 24 L. R. A. (N.S.) 788; *Kluska v. Yeomans,* 54 Wash. 465, 103 Pac. 819, 132 Am. St. 1121; *Highland v. Wilsonian Inv. Co.,* 171 Wash. 34, 17 P. (2d) 631; *Case v. Peterson,* 17 Wn. (2d) 523, 136 P. (2d) 192; *Mahlum v. Seattle School Dist. No. 1,* 21 Wn. (2d) 89, 149 P. (2d) 918; *D'Amico v. Conquista,* 24 Wn. (2d) 674, 167 P. (2d) 157.

However, the authorities are uniform to the effect, as stated in 38 Am. Jur. 995, Negligence, § 299, that, when all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption or

inference can be indulged, and the doctrine of *res ipsa loquitur* has no application.

This principle was recognized in the case of *Anderson v. Harrison*, 4 Wn. (2d) 265, 103 P. (2d) 320, where this court, after explaining the rationale of the doctrine of *res ipsa loquitur*, said:

"In this case, however, the doctrine of *res ipsa loquitur* is not applicable, because it is clear from the evidence upon which the parties, respectively, relied that the collision in question was the result of a definite cause. This case is not an instance of an unsuccessful attempt to prove the precise cause, but, on the contrary, is an instance of a reliance upon definite causative facts, excluding all inferences of a cause or thing which, unexplained, does not happen, according to common experience, without fault on the part of the carrier. In such cases, the doctrine does not apply. [Citing cases.]"

So, in the case at bar, this was not an instance of an unsuccessful attempt to prove a precise cause, but rather was it an instance of a reliance upon definite causative facts, excluding all inferences of any other cause or thing which, unexplained, does not happen, according to common experience, without fault on the part of the defendant.

The instruction given by the trial court in this case was, in our opinion, inapplicable for two reasons: (1) It was not necessary for the fair administration of justice between the parties; and (2) it imposed upon the appellant the unjust burden of producing evidence upon some unknown, uncertain, conjectural cause which neither party had, or could have had, in mind. The facts constituting the alleged negligence, if any there was, and the only circumstances upon which the claim of negligence could have been based, were produced before the jury. The instruction, however, permitted the jury to return verdicts in favor of respondents, even though it found from the evidence that appellant was not guilty of any specific act of negligence alleged or relied upon by respondents. The instruction was prejudicial and constituted reversible error.

Since this case must be returned for a new trial, it is necessary to discuss certain other assignments of error, re-

lating to instructions. The trial court gave instruction No. 6, which reads:

"The defendant railroad and its fireman and engineer were required to use reasonable and ordinary care in the operation of the defendant's switch engine and not to unnecessarily jeopardize the safety of users of the highway by emitting sudden and unnecessary exhausts of steam and smoke which would obstruct the vision of the users of the highway at a time when the railroad company's employees observed, *or by the exercise of reasonable caution and care should have observed the vehicle in which the plaintiffs were riding and the truck operated by the Fioritos.*" (Italics ours.)

The court also gave instruction No. 7, which reads, in part, as follows:

"If you find by a preponderance of the evidence that the defendant Railroad Company's engineer and fireman saw, *or by the exercise of reasonable care should have seen, the vehicle involved in the collision prior to the time when the steam was emitted from the locomotive,* and if you further find by a preponderance of the evidence that said engineer and fireman knew, *or with the exercise of reasonable care should have known, that the emission of a sudden cloud of steam would obstruct the vision of the operator of said motor vehicle, then the emission of such steam under such circumstances would constitute negligence.*" (Italics ours.)

Appellant excepted to these instructions, and to the refusal of the trial court to give its requested instruction reading:

"You are instructed that the agents of the defendant Union Pacific Railroad Company, properly operating the engine along the track parallel to East Marginal Way, were under no duty to observe travelers on the highway."

It is conceded that there was no evidence that the railroad crew actually saw either of the two motor vehicles. Therefore, unless appellant's agents were under some legal duty to observe those vehicles, the instructions as given by the trial court were improper.

Appellant contends that there was no such legal duty. Respondents, however, in their brief state that:

"While the railroad may have been under no duty to have observed traffic, insofar as the usual and normal incidents to the operation of the railroad were concerned, there certainly is a duty to avoid any act which was not usual and necessary to the normal operation, and which would unnecessarily endanger travelers upon the highway."

 In the absence of statute, there is no legal duty imposed upon the engineer or fireman of a locomotive to observe traffic upon a highway alongside its railroad track. *Lamb v. Old Colony R. Co.*, 140 Mass. 79, 2 N. E. 932, 54 Am. Rep. 449; *Louisville & N. R. Co. v. Smith*, 107 Ky. 178, 53 S. W. 269, 21 Ky. Law Rep. 857; *Robinson v. Chesapeake & O. R. Co.*, 227 Ky. 458, 13 S. W. (2d) 500; *Southern R. Co. v. Flynt*, 2 Ga. App. 162, 58 S. E. 374; *Button v. Pennsylvania R. Co.*, 115 Ind. App. 210, 57 N. E. (2d) 444; 52 C. J. 762, Railroads, § 2301.

While these cases relate mainly to situations where animals are frightened by a railroad train and the plaintiff is injured, the rule is, in our opinion, equally applicable to situations such as we have here, in so far as the rule relates to the duty of the engineer or fireman to observe traffic upon the highway alongside, and to the degree of care owed to them.

However, while under that rule a railroad engineer and fireman are under no duty to observe such travelers, yet, if they have observed them, or, if such employees discover a dangerous situation, then it becomes their duty to use care to avert injury. *Jones v. Spokane, Portland & Seattle R. Co.*, 69 Wash. 12, 124 Pac. 142; *Lamb v. Old Colony R. Co.*, *supra*; *Robinson v. Chesapeake & O. R. Co.*, *supra*; 52 C. J. 763, Railroads, § 2303.

 Under the rules above stated, the instructions complained of did not correctly inform the jury as to the law. Instead, they advised the jury that, even though the emission of the steam from the locomotive was a normal operation, nevertheless, if the steam would jeopardize the respondents, and, if the engineer or fireman *should have seen* the respondents, then the emission of the steam would constitute negligence. The instructions were erroneous and

should not have been given in that form. For the same reason, since the members of the railroad crew did not see the respondents and were unaware of the impending danger, the instruction requested by the appellant was proper, and should have been given.

Appellant finally assigns as error the refusal of the trial court to give its requested instruction No. 9, which reads:

"You are instructed that the driver of the automobile in which plaintiffs were riding could see the defendant's locomotive and train, and knew that in due course she would overtake and pass said locomotive, and that no other warning of its presence or that it would emit steam in its proper operation could be required."

We think this instruction, taken as a whole, constituted or included a comment on the evidence, and for that reason should not have been given in the form presented. Moreover, other instructions advised the jury that appellant had a right to operate its trains on the track adjoining east Marginal way and was not responsible to respondents or other travelers on the highway for the consequences of noise, vibration, smoke, or steam caused by the proper running of its trains.

A reading of the instructions as a whole convinces us that appellant was not prejudiced by the refusal of the court to give its requested instruction, or some equivalent thereof, on the subject of warning.

For the errors committed, as hereinabove indicated, the judgment is reversed and the cause remanded for a new trial.

MALLERY, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.